Mettler v. Craft.

# IRA METTLER

v.

# JOSEPH CRAFT.

*Real Property—Ejectment—Bill to Enjoin Execution of Judgment— Establishment of Lien for Improvements by Defeated Defendant—Chain of Title—Estoppel—Constructive Fraud—Insufficient Evidence to Establish —Statute.*

1.    Upon a bill in equity, filed by a defeated party (the defendant) in an ejectment suit to establish a lien and to recover for betterments on lots which, at the time most of the betterments were placed thereon, were owned

by a married woman who owned the reversionary interest in fee and whose title was of record and open to inspection, *held*, it being admitted that the case did not fall within the provisions of the ejectment law providing for the appointment of commissioners, etc., that the evidence failed to charge the defendants either with constructive fraud or with an estoppel, and that the bill could not be maintained.

2. The statute of this State in regard to allowance for betterments to a defeated party in ejectment was intended to cover the entire ground, especially in cases where the defeated defendant takes the initiative and the plaintiff makes no claim for rents and profits.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of Ogle County; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

This was a bill in equity filed by the appellee against the appellant, seeking to subject lots 9 and 10 in block 5, in the city of Rochelle, to the payment in the nature of a lien of a certain sum of money expended by appellee and his intermediate grantors on the said lots by way of improvements, the legal title to the same having failed, and appellant having recovered the same in an action of ejectment against the appellee. The facts in the case appear about as follows:

The lots, by government description, were entered by Sheldon Bartholomew, the father of Maria Ross, who died in 1846, intestate, leaving as his only heir the said Maria, who, prior to her attempted conveyance hereinafter mentioned, became the wife of Isaac Ross, and also leaving his widow, Charlotte A., who afterward became the wife of Matthew B. Powell, who died prior to the time of the attempted conveyance hereinafter mentioned; that of the marriage of the said Maria and Isaac Ross, there was issue born alone capable of inheriting from its parents prior to the attempted conveyance of said Maria hereafter mentioned, so that at the time of the conveyance by said Maria and her husband hereafter mentioned the said Isaac was endowed with a life estate by curtesy in said lots, and Maria had an estate in fee for the remainder. It appears that the said Isaac Ross and Maria Ross and Charlotte A. Powell executed a supposed conveyance of said lots to Robert P. Lane, July 19, 1853, which was,

on the 18th of August, 1853, duly recorded, but the said deed made no mention of the fact that said Maria Ross was the wife of said Isaac Ross, nor did the certificate of acknowledgment of the notary public who took the acknowledgment contain any statement or certificate that said Maria Ross, wife of said Isaac Ross, was examined separate and apart from her husband, or that the contents and meaning of the deed were made known and explained to her, and hence, the acknowledgment and conveyance failed to conform to the statute and was ineffectual to convey the reversionary estate of said Maria Ross, which plainly appeared from the record, if the grantee in said deed and the subsequent grantees be held to acknowledge that the said Maria was at the time the wife of said Isaac. It appears that said Lane by quit-claim deed conveyed the land to Thomas D. Robertson, November, 13, 1855, and on October 30, 1862, said Robertson conveyed the same to Obadiah Walrath; that on the 24th March, 1864, said Walrath conveyed the same to Judson E. Carpenter; that on October 16, 1868, said Carpenter conveyed the same to appellee. These various deeds were duly recorded soon after their execution. The first deed from the Rosses to Lane conveyed about seven and three-fourths acres of land which were afterward by Lane laid out into town lots, in the original town of Lane, now Rochelle, and the deed from Lane to Robertson and the subsequent deed alone conveyed the town lots in question. The master's report shows that he finds that the intention of all the parties to the first deed was to convey to said Lane the title to said lots in fee. It appears that said Walrath, while he held the title, improved the lots by erecting a dwelling thereon; that while said Carpenter held the title, he built an addition to the dwelling-house on said lots, and made improvements to the value of $700 or $800, and occupied the same as a residence; that the appellee some time in 1869 made valuable improvements on the lots by building a barn and fencing to the value of $325, and in 1885 made further improvements by building an addition to the house, putting on a bay window and digging a well at a cost of about $850, and that all taxes were paid on said lots by Lane and his

grantees, and that the lots had no rental value aside from the improvements. The master further found the market value of the improvements was $1,750, and the value of the lots without them was $500. It appears that the said Maria Ross died in the year 1871; that Isaac Ross died in the year 1885. It appears that the said Maria Ross continued to live near the said premises much of the time after the land was laid out into town lots—within one hundred to one hundred and twenty rods of the said lots—within the said town of Lane, until her death, in 1871, being absent only about one year. There is no other evidence that Maria Ross knew that any of the improvements were being put on the lots, nor does it appear from the evidence that she ever gave any of the parties acquiring an interest in said lots any notice that she claimed any interest or title in the same. It appears that the appellant recovered in an ejectment suit against the appellee a judgment for the possession of the said lots and the title in fee at the March term of the Circuit Court in the year 1890, and that appellant derived title in fee to said lots by sundry *mesne* conveyances from the heirs of Maria Ross, deceased. The appellee claimed the said lots on his part through the deeds from Maria Ross to Lane and from Lane to him by the conveyances above set forth. This bill was filed by the appellee claiming to be the equitable owner of the improvements and to have an equitable lien on said premises for the value of such improvements to the extent that they had increased the value of the premises, and claiming that the appellant is not entitled to the possession of the premises until he shall have first paid appellee for the improvements, praying that appellant should be enjoined from suing out and having executed a writ of possession in said ejectment suit until the value of the improvements and lots could be ascertained and until the appellant should pay to appellee the value of such improvements, and equitable relief.

The court referred the case to the master in chancery, who took the evidence and reported to the court the facts as above stated; thereupon the court found the issues in favor of appellee and decreed that appellant pay him within one year $1,750

for such permanent improvements, or that appellant might at any time within said time require complainant to pay him $500, the value of said premises exclusive of the said improvements, upon appellant conveying the said lots to appellee. From this decree this appeal is prosecuted.

Messrs. O'BRIEN & O'BRIEN and DIXON & BETHEA, for appellant.

1. The life tenant can not charge the remainderman with improvements, even though of a permanent character. Thurston v. Dickinson, 2 Rich. Eq. 317; Merritt v. Scott, 81 N. C. 385; Pratt v. Douglass, 38 N. J. Law, 516; Austin v. Stevens, 24 Me. 520; Runey v. Edmonds, 15 Mass. 291.

The life tenant who makes improvements during the life estate can not receive the benefits therefor under the occupying claimants law. Note to Stewart v. Matheney, 14 Am. St. R. 540; Smalley v. Isaacson, 40 Minn. 450; Barrett v. Stradl, 73 Wis. 385; S. C., 9 Am. St. R. 795 and note, 805, 806, on improvements generally; Elam v. Parkhill, 60 Tex. 581.

An exception is where the life tenant goes on and finishes improvements begun by the donor of the estate. Corbett v. Laurens, 5 Rich. Eq. 301; Sohier v. Eldredge, 103 Mass. 345.

2. The rule in equity setting off to one tenant in common the improved portion enhanced by his meliorations, or, in a proper case, compelling compensation, is based upon principles peculiar to that class of cases. Then the owner does not recover his land at law, but the proceeding is in its inception and throughout purely equitable and all are compelled to do equity. The land, if incapable of division, must be sold, and as an incident only is the improver entitled to compensation.

3. There is another class of cases where it might at first seem the remainderman was obliged to reimburse the life tenant for improvements, but they rest on an equity peculiar to themselves. That is, where lands are devised or conveyed to trustees for one for life and another in remainder, power is frequently conferred on the trustees to improve, sell and reinvest, etc.

If improvements are made out of the income of the life tenant, equity will make a proportionate charge upon the estate of the remainderman upon the principle of carrying out the trust.

4. And a doctrine akin to this, under some circumstances finds a legitimate application to the case of a mortgagee in possession who·makes improvements, or a purchaser under a foreclosure sale when a junior mortgagee, or judgment creditor redeems. These are some of the exceptions, but the rule itself is well established.

" The full doctrine of estoppel is not applied to a married woman, because she is not *sui juris*, but under disability." Stevenson v. Osborne, 41 Miss. 119; Lowell v. Daniels, 2 Gray, 161; Keen v. Hartman, 12 Wright (Pa.), 497; Martin v. Martin, 12 La. An. 86; Lothrop v. Foster, 51 Me. 367; Burns v. Lynde, 6 Allen, 305; Towles v. Fisher, 77 N. C. 443; Lyman v. Cessford, 15 Ia. 233.

"Hence, as she could not contract at common law, her *quasi* contracts were not estoppels." Glidden v. Strupler, *supra;* Plumer v. Lord, 5 Allen, 460; Davenport v. Nelson, 4 Camp. 125; Bodine v. Killeen, 53 N. Y. 93; Todd v. Railroad, 19 Ohio St. 514.

" Because this would remove her incapacity and allow her to bind herself by way of estoppel; but, in the absence of her husband's coercion, she can bind herself by way of estoppel by some affirmative act of fraud; " citing Towles v. Fisher, 77 N. C. 443; Lyman v. Cessford, 15 Ia. 233; Schwartz v. Saunders, 46 Ill. 18; Oglesby Coal Co. v. Pasco,79 Ill. 170; Sharpe v. Foy, (L. R.) 4 Ch. App. 35; Jones v. Frost, (L. R.) 7 Ch. App. 713. *Contra:* Bemis v. Call, 10 Allen, 512; Palmer v. Cross, 1 Sm. & M. 48; Rangley v. Spring, 21 Me. 130.

" A mere passive silence in regard to her rights is not such a fraud as will amount to an estoppel." U. S. Bank v. Lee, 13 Pet. 118; Palmer v. Cross, 1 Sm. & M. 48, 68; Drake v. Glover, 30 Ala. 382; Canty v. Sanderford, 37 Ala. 91; Havener v. Godfrey, 3 W. Va. 426; In re Lush's Trust (L. R.), 4 Ch. App. 591.

" It must be a positive fraudulent act." Amsley v. Mead, 3 Lans. 116; Westgate v. Munroe, 100 Mass. 227.

Mettler v. Craft.

" Such as where she had made a sworn disclaimer of own-ership." Cooley v. Steele, 2 Head. 605; Lathrop v. Ass'n, 45 Ga. 483; Cravens v. Booth, 8 Tex. 243.

" Or her announcement at the sale of her husband's real estate that she would not claim dower. (But this has been doubted and is supported by one case only.)"

" Her active connivance in her husband's fraud." Anderson v. Armstead, 69 Ill. 456; Bodine v. Kelleen, 53 N. Y. 93.

" Or knowingly permitting him to gain credit on the faith of property which in truth belongs to her."

" On the other hand, any contract which a married woman, by false representations, induces another to enter into with herself is not an estoppel."

" She can only be divested of her property in the method prescribed by law." Morrison v. Wilson, 13 Cal. 498; McIntosh v. Smith, 2 La. Ann. 758; Bisland v. Provosty, 14 La. Ann. 169.

" Unless where the fraud is intentional, and reaching an estoppel." Saxton v. Wheaton, 8 Wheat. 238.

It may be difficult to reconcile Patterson v. Lawrence, 90 Ill. 174, with Weiland v. Kobick, 110 Ill. 16, where it is held the fraudulent representations of a minor do not estop him; but in this case it is unnecessary to attempt it, as the furthest the case of Patterson v. Lawrence goes, is to hold a *feme covert* estopped by her active or positive fraud.

The best and most authoritative discussion on the subject is found in Oglesby Coal Co. v. Pasco, 79 Ill. 164, where the court say : " The question must be determined with reference to the law in force in relation to the separate property of married women at the time the interest descended to Abigail Pepson, and when the conveyances to John Corrigan and herself were made, that is, the 4th day of May, 1865. ' The weight of reason and authority,' says Bigelow, in his work on Estoppel, page 490, after a careful review of the adjudged cases, ' seem to establish the proposition that a married woman may preclude herself from denying the truth of her representations, but only in the case of *pure torts*, and that if her conduct is so connected with contract that the action

sounds in contract, there can be no estoppel.'" See Schwartz
et ux. v. Saunders, 46 Ill. 18, and Anderson v. Armstead,
69 Id. 452.

But in Moulton v. Hurd, 20 Ill. 137, Lindley v. Smith et al.,
58 Ill. 250, and Hutchings v. Huggins, 59 Ill. 29, it was held
that a married woman can only alienate her real estate by
joining with her husband in a deed, acknowledged as required
by statute, and that a court of equity has no power to reform
her deed for any mistake in its provisions or in the certificate
of acknowledgment. And in Bressler et al. v. Kent, 61 Ill.
426, it was held the same doctrine is applicable to cases aris-
ing since the law of 1861. And Rogers v. Higgins et al., 48
Ill. 212, is a still stronger case.

The law presumes that our dealing with a person under
disability, and knowing the fact, intends to incur the conse-
quence of his acts, and equity will not relieve against him, or
otherwise afford relief.

In England a married woman is liable jointly with her
husband for torts committed by her, but she can not be made
liable on a contract on the ground that it was induced by
her fraudulent representations. 2 Lawson's Rights, Rem. &
Prac., Sec. 754; Liverpool Loan Asso'n v. Fairbust, 9 Ex. 429.

Thus an action will not lie against a wife and husband
for a fraud of the wife in representing herself to be
single, whereby plaintiff was induced to take her promissory
note. Ib.

A married woman is not estopped from setting up her
coverture to an action on her judgment bond, by the fact that
she falsely represents herself as single, and thereby obtains
the consideration for which it was given. Keen v. Coleman,
39 Pa. St. 299; 80 Am. Dec. 524.

How it is in this State, where the wife, by active fraud or
passive fraudulent concealment induces another to enter into
a contract, seems to us to be unsettled, unless the cases of
Patterson v. Lawrence, 90 Ill. 174, and Weiland v. Kobick,
110 Ill. 16, can be reconciled. Be this as it may, there can be
no pretense in this case that there was any active fraud or
even fraudulent concealment— any *pure tort* " not grounded

or predicated on contract." Compare Matthews et al. v. Cowen et al., 59 Ill. 341.

It is said in Lawson's Rights, Rem. & Prac., 2701, that "to pass an estate by estoppel the party must have power to pass it by direct conveyance."

In discriminating between the decisions of the different States it should be borne in mind, as is said by Schouler in his work on Dom. Rel., 154: "That in some States the separate conveyance of a married woman, or her execution jointly with her husband, but without observance of the statute formalities, is void. But in others such irregularities are not held fatal to the instrument, and she is bound on the usual principles."

Of the latter sort the author cites Albany Fire Ins. Co. v. Bay, 4 Comst. 9; Card v. Patterson, 5 Ohio, 319; Smith v. Perry, 26 Vt. 279.

This explains the decision in Hill v. West, 31 Amer. Dec. 442, to the effect that the covenants of a married woman in a deed of her real estate estop her from asserting a subsequently acquired title.

The rule in our State is the other way. Lindley v. Smith, 46 Ill. 523; Rogers v. Higgins, 48 Ill. 211; Mason v. Brock, 12 Ill. 273, and many other cases.

The same distinction is stated by Lawson, thus : In some States her conveyance, even where her husband joins, but without these statutory formalities is void; citing Bressler v. Kent, 61 Ill. 426; while in others irregularities in the execution are not necessarily fatal to the instrument. 2 Law., R., R. & P. 741, citing the same authorities cited by Schouler, and also Strickland v. Bartlett, 51 Me. 355; Hollingsworth v. McDonald, 2 Har. & J. 230; S. C., 3 Am. Dec. 545; Womack v. Womack, 8 Tex. 397; 58 Am. Dec. 119.

In considering the question of estoppel *in pais*, this distinction should be borne in mind as materially affecting the weight to be given in our courts to the decisions in other States. Massie v. Sebastian, 4 Bibb, 436; Nash v. Spafford, 10 Met. 192; Colcord v. Swan, 7 Mass. 291.

An injunction will not be allowed against proceedings in

ejectment brought by the owner of land after attaining his majority who, while an infant, had contracted for the sale of the land, and given a bond for the conveyance, but had repudiated the contract on coming of age, and refused to ratify the sale, even though the purchase money has been paid. Browner v. Franklin, 4 Gill. 463.

An infant, if he has parted with the consideration, may disaffirm his deed after he arrives at age, without restoring the consideration. Bennett v. McLaughlin, 13 Ill. App. 351; Bishop on Contracts, 921; Green v. Green, 69 N. Y. 553; Chandler v. Simmons, 97 Mass. 578; Bartlett v. Drake, 100 Mass. 174; Miller v. Smith, 26 Minn. 248; Tucker v. Moreland, 10 Pet. 65; Shaw v. Boyd, 5 S. & R. 309.

A *feme covert* was not, under the law of 1861, or that of 1869, bound by her covenants in a deed, nor could she be estopped by her declarations or admissions therein. Snell et al. v. Snell et al., 123 Ill. 403; Strawn v. Strawn et al., 50 Ill. 37; Botsford v. Wilson et al., 75 Ill. 135; Sanford v. Kane, 24 Ill. App. 509; Schouler's Dom. Rel., 155; Rawle on Cov. for Tit., 251; Gonzales v. Hukel, 49 Ala. 260; Shumaker v. Johnson, 35 Ind. 33; Thompson v. Merrill, 58 Ia. 419; Hobbs v. King, 2 Met. (Ky.) 141; Hempstead v. Easton, 33 Mo. 142; Wadleigh v. Glines, 6 N. H. 18; Dem d. Hopper v. Demarest, 1 Zabr. (N. J.) 541; Martin v. Dwelly, 6 Wend. 14; Carpenter v. Schermerhorn, 2 Barb. Ch. 424; Dominick v. Michael, 4 Sandf. Ch. 424; Groat v. Townsend, 2 Hill (N. Y.), 557; Edwards v. Davenport, 4 McCr. U. S. C. C. 34; Lowell v. Daniels, 2 Gray, 168.

In some States it is provided by statute that a married woman shall not be bound by covenants in her deed though it be properly executed and acknowledged. Rev. Stat. Ill. 1845, Ch. 24, Sec. 17; Rawle on Cov. for Tit., 251, citing enactments of Virginia, Delaware, Illinois, Indiana, Michigan, Missouri and Oregon; Strawn v. Strawn, 50 Ill. 33.

The great weight of authority is this way without the aid of statutes. Rawle on Cov. for Tit., Sec. 306.

Mere acquiescence for three, or even ten years (in the absence of any statute), after arriving at age, without any

Mettler v. Craft.

affirmative act, is not a ratification by the infant. Jackson v. Carpenter, 11 Johns. 542; Jackson ex dem. v. Durham, 14 Johns. 123; Green v. Green, 69 N. Y. 553; 23 Me. 517.

It is said in the case in 11 Johns. 542: "It would be contrary to the benign principles of the law by which the imbecility and indiscretion of infants are protected from injury to their property, that a mere acquiescence, without any intermediate or continued benefit, showing his assent, should operate as an extinguishment of his title." With how much greater force do these principles apply to a *feme covert*, whose contracts are absolutely void, and not, like an infant's, merely voidable.

" In respect to property not settled to her separate use, a married woman can not bind herself in equity in matter of contract any more than she can at law, but coverture is no excuse in equity for fraud. The acquiescence, however, of a married woman in a transaction will not bind her if the person with whom the transaction was entered into knew that she was a married woman." Kerr on Fraud & Mis., 150; Nicholl v. Jones, 36 L. J. Ch. 554; Wilks v. Fitzpatrick, 1 Humph. 541; Glidden v. Strupler, 52 Pa. St. 400.

Acquiescence, silence, or the mere omission to assert her rights, does not apply to or estop a married woman where her husband by fraud makes an unauthorized use thereof, or obtains credit on the faith of her property. Kerr on Fraud & Mis., 149; Bank of U. S. v. Lee, 13 Pet. 107; Hunter v. Foster, 4 Humph. 211; Gatting v. Rodman, 6 Md. 289; Drake v. Glover, 30 Ala. 382; McIntosh v. Smith, 2 La Ann. 756; Palmer v. Cross, 1 Smed. & M. 48; Glidden v. Strupler, *supra;* Lowell v. Daniels, *supra;* Keen v. Coleman, 5 Wright (Pa.), 299; Stephenson v. Osborne, 41 Miss. 119, 120; Martin v. Martin, 22 Ala. 86; Lothrop v. Foster, 51 Me. 367; Plumer v. Low, 5 Allen, 450; Davenport v. Nelson, 4 Camp. 25; Bodine v. Killeen, 53 N. Y. 93.

Messrs. M. D. HATHAWAY and WILLIAM LATHROP, for appellee.

It was settled long prior to Bright v. Boyd, 1 and 2 Story's Reports, that courts of equity, where a complainant asked

relief against a person in possession of lands who had made permanent improvements under the belief that he was the owner of the lands, compelled or required such complainant. to compensate such possessor, to the extent his permanent improvements had enhanced the vendible value of the land, as a condition of granting relief to complainant, and gave the possessor a lien upon the premises for the payment of such enhanced value. 2 Story's Equity Jurisprudence, 799 a, 799 b; 3 Pomeroy's Equity, Sec. 1241; Neesom v. Clarkson, 4 Hare, 97; Putnam v. Ritchie, 6 Paige, 390, Sec. 404.

Story's Equity was published in 1835; Putman v. Ritchie was decided in 1837; Bright v. Boyd, decided by Judge Story in 1841 and 1843.

In Bright v. Boyd, Bright was a purchaser at an administrator's sale. The administrator's deed was void, because the administrator had not observed all the requirements of the statute in making sale and conveyance. Bright had taken possession, and made valuable improvements. Upon being evicted he filed his bill for relief, and asking pay for improvements. While equity could not relieve against a defective execution of a statutory power, it did grant the purchaser relief to the extent of his permanent improvements.

In the case at bar, the deed of Maria Ross is void for exactly the same reason, viz.: A defective execution of a statutory power. Here the statutory power was one enabling a married woman to convey her real estate, and the defect was in the certificate of acknowledgment. As in the Bright case, so here, the grantee upon being evicted because of the defective deed, has filed his bill asking pay for his permanent improvements.

For confirmation of this equitable ruling of Bright v. Boyd, see 15 Am. Dec., Jackson v. Lomis, and reporters' notes, page 353; 30 Am. Dec., Scott v. Dunn, and reporters' notes, pages 181, 182; 40 Am. Dec., Herring v. Pollard, Ex'rs, and reporters' notes, 653, etc.; Union Hall Association v. Morrison, 39 Md. 281; Hatcher v. Briggs, 6 Oregon, 31; Story, Eq. Jur., see notes to Secs. 385, 388, 799 b, 1237, etc.; Preston, trustee, v. Brown, 35 Ohio State, 18; Thomas v. Thomas, 16

Mettler v. Craft.

B. Monroe, 420; Hawkins v. Brown, 80 Kentucky, 186; Valle v. Fleming, 29 Mo. 152; Kanawha Coal Co. v. Kanawha & Ohio C. Co., 7 Blatchford, 391; Griswold v. Bragg and wife 48 Conn. 577; Ross v. Irving, 14 Ill. 171, see 176–178; Cable v. Ellis, 120 Ill. 136, see 152; 2 Warvelle, Vendors, Sec. 8, pages 904, 905; see also 10 Am. & Eng. Encyclop., page 243, etc.

Our own Supreme Court in Ross v. Irving, etc., 14 Ill. 171, on pages 176 and 177, has not only fully indorsed and commended the equitable doctrine of Bright v. Boyd, but has in subsequent cases adopted and declared the rule of equitable relief in quite as full and liberal measure as given in that case. See Breit et al. v. Yeaton et al., 101 Ill. 242; Cable et al. v. Ellis et al., 120 Ill. 136.

In this litigation certain persons not made parties came and by petition intervened and prayed to be made parties, and allowed a first lien on the premises for alleged improvements made by them.

The court in passing upon their right to pay for improvements, declared the rule in equity of payment for permanent improvement as follows, viz.: see page 152.

" Through the research of counsel for appellee Ellis, our attention has been directed to still another line of cases bearing upon this question, and while no one of these cases, because of variant and distinguishing circumstances, can be accepted as decisive of the question here, or as embodying all the elements of this equitable doctrine as recognized and applied by the court, an examination of all the cases has satisfied us that the true rule is, that where improvements upon real estate of a permanent character, are made in good faith by one in possession, believing himself to be a *bona fide* purchaser or owner for value, and under circumstances justifying such belief, and the expenditure is reasonable in amount and of benefit to the estate, allowance may, in a court of equity, be made therefor; but the person claiming such allowance will be charged with the value of the use and occupation of the premises." Citing McConnel v. Holobush, 11 Ill. 61; Breit v. Yeaton, 101 Ill. 242; Bradley v. Snyder, 14 Ill. 263;

Miller v. Thomas, 14 Ill. 428; Gardner v. Diederichs, 41 Ill. 158; Kinney v. Knoebel, 51 Ill. 112; Roberts v. Fleming, 53 Ill. 196; Smith v. Knoebel, 82 Ill. 392; Worth v. Worth, 84 Ill. 442; Ebelmesser v. Ebelmesser, 99 Ill. 541. .

From these cases the court extracts the equitable rule to be applied in determining the rights of litigants. The rule is announced with deliberation and without qualification.

It is to be observed further that the rule of equity declared in Bright v. Boyd and by our own Supreme Court is deduced from the duty and obligations of the court to enforce what is just and honest and to observe the maxim that no one be suffered to grow rich by the misfortune of another. The rule is declared without exception, and neither infants nor married women are excepted from its operation.

Our Supreme Court in Ross v. Irving, etc., 14 Ill. on page 183, declares: "We can not but regard it (the occupying claimant law) as highly equitable in its character and constitutional in principle."

And the court in Potts v. Cullom et al., 68 Ill. 217, declares that the Legislature, by Sec. 55 of the Ejectment Act, intended to afford a speedy method of adjusting the value of permanent improvements, and on page 220, says Sec. 55 "makes no exception in cases where minors are plaintiffs, but is genera', and seems to embrace all plaintiffs (in ejectment), regardless of disability." And equally without exception and regardless of disability is the rule in equity where the *bona fide* possessor is evicted and asks compensation for his permanent improvements.

A *bona fide* purchaser without notice, within the meaning of a court of equity, is one who has purchased under such circumstances as to be protected in his purchase against prior claimants. William et al. v. Tilt et al., 36 N. Y. 319; Dresser v. Missouri & Iowa R. R. Construction Co., 93 U. S. 92.

LACEY, J. The only question for us to decide in this case under the circumstances shown by the evidence is whether the appellee has a right to maintain this action for the recovery of the value of the improvements placed on the lots by the

various grantees of Lane's title, including those placed thereon by appellee. It is admitted by the counsel for appellee that his title is of such a character as to deprive him of the right to the appointment of commissioners to estimate the value of the permanent improvements in the manner provided for in the Ejectment Act.

That act provides as follows: "Every person who may hereafter be evicted from any land for which he can show a plain, clear and connected title in law or equity deduced from the record of some public office without actual notice of an adverse title," etc., may have his valuable improvements estimated and secured to him as provided for in the act.

This may be done by the appointment of commissioners to ascertain the value of such improvements and by the allowance of the same by the court as an adjunct to and continuation of the ejectment suit as provided for in the statute.

It would seem plain that if these damages claimed by appellee could have been assessed under the provisions of the statute then appellee had a plain and adequate remedy at law and the court below should not have entertained this bill. This is admitted by the appellee in his brief, but he insists and claims that inasmuch as Maria Ross was a married woman and the acknowledgment of her deed to Lane was not in the form required by the statute to convey a married woman's estate, the record of title did not show on its face " a clear, plain and connected title in law or equity of record connecting it with a public office," and therefore appellee could not recover by virtue of the statute; but that he has an equity outside and independent of the statute to recover for the permanent improvements by virtue of the principle of the common law. It is insisted also, as one of the equities, that the uncontroverted acts of Maria Ross in making the deed in question to Lane and her presumed knowledge of the making of the improvements on the premises constitutes a case of constructive fraud so far as to charge her, her heirs and grantees, with the enhanced value of the premises by reason of permanent improvements. It is thought that her acts, while not sufficient to bar her title to the premises and that

of her heirs and grantees, are yet sufficient to estop her from claiming the land free from the supposed lien of the incumbrance created by the improvements.

We, however, take a different view of the case on this point, and see nothing in the acts or conduct of Maria Ross to create an estoppel of this kind against her. At the time she executed the supposed deed to Lane she was a married woman, the wife of Isaac Ross. Although this fact did not appear from the face of the deed, it was as well known to Lane, the grantee, as it was to her and Ross. She made no representations to them whatever, so far as the evidence shows, and they were as capable of judging of the validity of the deed as she was. If Lane supposed he was getting her title in fee it was a mistake of law on his part as much so as it was on hers. The law as well settled by "the weight of reason and authority," says Bigelow in his work on Estoppel, p. 490, after a careful review of the adjudged cases " seems to establish the proposition that a married woman may preclude herself from denying the truth of her representations, but only in the case of pure torts, and that if her conduct is so connected with contract that the action sounds in contract, there can be no estoppel."

This quotation from Bigelow is approved in Oglesby Coal Co. v. Pasco et al., 79 Ill. 164. In this opinion several illustrations of the doctrine are given from decisions of the Supreme Court of this State, such as, "If the wife fraudulently permit her husband to represent himself as the owner of her separate property, and procures mechanics to make valuable improvements thereon without disclosing her ownership or repudiating his authority, she is estopped afterward from denying his authority to cause the improvements to be made, when the mechanics seek to enforce liens for the payment of the amount due," and the like cases.

But in other cases it is shown to be holden that " a married woman can only alienate her real estate by joining with her husband in a deed for that purpose, acknowledged as required by statute, and that a court of equity has no power to reform her deed for any mistake in its provisions or in a certificate

of acknowledgment." And it was held that "the same doctrine is applicable in cases arising since the law of 1861, relating to the separate property of married women, went into force, as well as before." Another case therein cited holds that "the law presumes that one dealing with a person under disability, and knowing the fact, intends to incur the consequence of his own act, and equity will not relieve him against them, or otherwise afford relief." In conclusion the court says: "It is clearly deducible from these cases that a wife can only be estopped in cases where she has been guilty of actual fraud, either by suppression of some fact upon which she knew the other party was relying, or a false representation of material facts which induced action."

In Robbins et al. v. Moore et al., 129 Ill. 30, the doctrine of what amounts to an estoppel *in pais* is quite fully discussed, and the following rule is deduced from the authorities there cited, to wit: "That where the foundation of the estoppel is silence and omission to give notice of existing rights, the party relying on the same must not have had the means of ascertaining the true state of the title by reference to the public record; but that such rule does not apply to a case where the land owner has not actively encouraged and induced the injured party to act. In the latter case the party making the declaration acted on will be estopped, although he may have been ignorant of his true rights. The other party may rely on his representations without further inquiry, and act upon the assumption that he is cognizant of his rights and knows the condition of his own title."

If we hold that this doctrine as above quoted is applicable to the case of a married woman when it concerns her property rights, we think it comes far short of governing a case like the one at bar. If it be conceded that Maria Ross knew that the intermediate grantees, Walrath, Carpenter and appellee, were putting the improvements on the lots in question under the supposition that they owned the title in fee, and she failed to make known to them her claim to the property, there could be no estoppel against her under the above rule, for we think the evidence fairly fails to show that she was cognizant of her

own rights in the premises, or that she actively encouraged or induced either of the above named holders of the lots to make the improvements which they did. The parties making the improvements in question knew or might have known as much about the condition of the title at the time the improvements were made as did Mrs. Ross. She was not the inducing cause of the improvements being made and was not called on by them to speak as to her rights; and she will be presumed to have acted in equal good faith in not protesting against the improvements, as they were in making them. Furthermore, the fact that they held a life interest in the estate of Isaac Ross, if known to Mrs. Ross, may have led her to suppose that these improvements, if she knew they were being put on the lots, were so being done with reference to such interest in them as the parties actually held and not under the supposition that they owned the title in fee. And we understand the law to be that such would be the presumption.

Neither of the occupying claimants, either before or after the improvements were put on the lots, ever approached Mrs. Ross in regard to the matter of placing such improvements thereon or asked her in regard to her claim of title thereto. And mere acquiescence, without some new fraud or tort, during the continuance of the same situation in which the party entered into the contract, goes for nothing. This is a general rule of law. Gowland v. DeFarea, 17 Vesey, 20–25. Mr. Carpenter and the appellee clearly knew, as the evidence shows, before they placed any improvements on the lots, that Mrs. Ross was the wife, and had been for many years, of Isaac Ross, and must have been such when the deed to Lane was made; they also must be held to have had constructive notice, at least, as to what the record shows in reference to the condition of their own title. We cite the following quotation and authorities: " A purchaser is supposed to have notice of any defect of title apparent on the face of his own papers or by the record, * * * but will not be required to look for latent defects in the chain of conveyances when regular on their face and apparently conveying the legal title." Robbins et al.

v. Moore et al., 129 Ill. 30; Hill et al. v. Blackwelder, 113 Ill. 283; Dart v. Hercules et al., 57 Ill. 446.

The record shows that Bartholomew, the father of Mrs. Ross, was the patentee. The first conveyance of record was from Isaac Ross, Maria Ross and Mrs. Powell, the widow of Bartholomew, deceased, to Lane. This on the face of the record showed a break in the chain of title; certain facts *dehors* the record must be known to one examining the title in order to show a perfect chain of title. The first would be that Bartholomew, the patentee, had died intestate and that Mrs. Ross was his only heir; but as the record of the deed to Lane showed that Mrs. Ross had conveyed the land by another name than that of her maiden name, the natural and necessary inquiry would be to one examining the title, how her name came to be changed, and as she and her husband lived in Rochelle at the time, the least inquiry would have led to a knowledge of the fact that she was the wife of Isaac Ross at the time of the execution of the deed to Lane. These facts were amply sufficient to put Lane and the subsequent grantees, if they did not otherwise know, upon their inquiry, and having once been put upon their inquiry they must be held to a knowledge of all the facts which such inquiry would have disclosed. Doyle v. Teas, 4 Scam. 202, and many subsequent cases. So that Walrath, as well as Carpenter and appellee, who had actual knowledge, must be held to notice that Mrs. Ross was the wife of Isaac Ross when she executed her attempted deed. We must also presume that as the improvements put on the place by Walrath had been so long ago that at the time the Carpenter and appellee's improvements were put on, the lots must have been worth very little, as the value of those put on by the two latter as shown by the evidence far exceeded the entire value of the improvements allowed by the court.

We now having disposed of the question of estoppel, we next proceed to notice the claim of appellee that he had a right to the allowance as against the appellant for the value of the improvements put upon the lots as a matter of natural equity. Many adjudged cases are cited by appellee and some

authority from the text books in support of his position; but we think none of them are applicable to this case under the laws of this State. The case of Bright v. Boyd, 2 Story, 605, appears to be very much relied upon, but upon examination of the facts of that case, we find that it was there held that the want of notice of the defects of title was essential to recovery. If the occupant had notice or could have had notice by reasonable search of the record, then we apprehend the rule would not apply, and especially so as the statute requires the title to be "clear, plain and connected of record." In the case at bar the claim for betterments is attempted to be fastened as a lien on the title itself of appellee. We are of the opinion that the statute of Illinois in regard to the allowance of betterments was intended to cover the entire ground, and that such claims are limited by the statute, especially in all cases where the defendant takes the initiative and becomes the claimant for betterments, and where the plaintiff makes no claim for rents and profits. In the first place, the statute allows a claim for betterments or improvements made on the premises to the amount of the plaintiff's claim for rents and profits as may be allowed by law to be set off against such claim in favor of the defendant in ejectment, and in estimating the plaintiff's damages for detention of the premises, the value of the use by the defendant of any improvements made by him will not be allowed to the plaintiff, but in no case will the proprietor of the better title be obliged to pay to the occupying claimant for improvements made after notice, more than what is equal to the rents and profits. Aforesaid sections 41 and 54, Ejectment Act, laws of 1869.

This allowance is given by the statute whether the defendant has a good or bad title, or no title at all, or without reference to his notice of whether he had a good or a bad title; but it has no reference to a case where the charge for improvement is sought to be recovered as a lien on the title of the land itself. The above claims for betterments by the defendant and also for rents and profits by the plaintiff were subject to the statute of limitations, as other like claims which ran against such improvements as well as the rents and profits,

Mettler v. Craft.

commencing from the date of filing the suggestion of claim under the 37th section of the act. Ringhouse v. Keener, 63 Ill. 230. There is only one case provided for in the statute where a claim for betterments and valuable and lasting improvements is allowed to become a charge against the land itself, and that is provided for in the 47th section of the act; and that must be a case where the defendant can show a " plain, clear and connected title in law or equity deduced from the record of some public office without actual notice of an adverse title in like manner derived from record," and in that case " he shall be free from all charges of rents, profits or damages, provided he shall have obtained peaceable possession of the land," as well as be allowed for the betterments. But in this case it is admitted no such clear chain of title is shown; otherwise the proper remedy of the appellee would have been to procure the appointment of a commission under the statute at the termination of the ejectment suit to estimate the value of the permanent improvements and not by bill as here attempted. See Asher v. Mitchell, 9 Ill. App. 335. The Legislature, no doubt, intended to give a party who was innocent of any defect in his title, and which showed on the record to be good and a complete chain, the benefit of all permanent improvements innocently placed on the land and which enhanced the value thereof, even to the extent of compelling the rightful owner to pay for them before he should recover the land or to accept the value of it without the improvements and convey the legal title to the occupying claimant. But it appears to us that the fact that the Legislature by its enactment covered the above case and no other, it by implication excluded other cases, and especially a case like the one at bar, where the defect in the title appeared of record and where the occupant of the lots could only be an innocent claimant by disregarding negligence and ignorance of the laws of the land. It is a fundamental and general rule of law that ignorance of law excuses no one. Every one is held in his dealings to know the law, and equity will rarely relieve against mistakes occurring on account of ignorance of the law. In the present case the title was of record, and only an

examination of the record of the deed from Isaac Ross and
Maria Ross to Lane, with the knowledge which Carpenter
and appellee actually had and which Walrath was bound to
have, that Mrs. Ross was a married woman at the time, was
necessary to disclose the illegal nature of the conveyance.
It appears from the evidence that appellee and the inter-
mediate grantees between Lane and himself never even
examined the deed to see whether it was a conveyance or not,
with the exception probably of the first grantee, Lane, who
alone can plead ignorance of the law, as the subsequent grant-
ees had not even informed themselves of the facts. But as
Lane made no improvements, his attitude in the matter is
immaterial. As illustrative that ignorance of law in such
matters is no excuse, we cite Dart v. Hercules et al., 57 Ill.
446. The doctrine of the court in Cable et al. v. Ellis et al.,
120 Ill. 136 is cited. The court say as to the rule allow-
ing for improvements, that the rule is: "Where the im-
provements upon real estate, of a permanent character, are
made in good faith, by one in possession, believing himself
to be a *bona fide* purchaser for value, and under circumstances
justifying such belief, and the expenditure is reasonable in
amount, allowance may, in a court of equity, be made there-
for; but the person claiming such allowance will be charged
with the value of the use and occupation of the premises."

The case in which the above rule was laid down did not
involve a decision of the question, and the above could hardly
be regarded as authority. The rule, however, is no doubt
correct in a proper case, and in just what case it would be
applicable we are left in the dark. The class of cases cited
by the court in that case are cases where the complainant has
appealed to a court of equity for relief, and in such cases it
is a maxim of the law that he who seeks equity must do
equity. Courts are quite liberal in applying this rule in a
case where a court of equity is applied to for relief. The rule,
as announced above, is restricted in its application to cases
where " the circumstances justify a belief in the claimant that
he is the *bona fide* owner of the land." We do not think, in
a case like this, that the facts could justify such a belief as

Mettler v. Craft.

will appear from what we have said. The rights of minors and married women are the peculiar care of the courts, and we think the policy of the law would forbid that a *feme covert* should be *improved* out of her estate, save in the case provided for in this statute which we have above quoted.

This is an unprecedented suit. A bill in equity is filed by a defeated party in ejectment to recover for betterments on lots which, at the time the betterments, or the most of them, were placed thereon, belonged to a married woman who owned the reversionary interest in fee, and whose title was of record and open to inspection, and it was only ignorance of law and negligence to examine the title which caused the belief on the part of appellee and his remote and immediate grantors that they had a good title. It is not a case provided for in the statute. The appellant, the grantee of the legal heirs of the original owner, Mrs. Ross, is not coming into court to ask equitable relief, but has already recovered his property in a court of law. And we think there is no law authorizing appellee to maintain this bill. It is entirely unprecedented in this State, so far as we can discover. In 3 Pomeroy's Eq. Jur., Sec. 3, 1241, the author says : " Under proper circumstances the owner is compelled to make compensation when he himself seeks the aid of equity, but not, it is held in Nieson v. Clarkson, 4 Hare, 97, when the one making the improvements is an *actor*." In the same section and paragraph it is said : " If, therefore, the true owner can recover his land by an action at law, equity will not, *in the absence of fraud*, compel him to reimburse the occupant, even if in good faith, for disbursements, made in repairs," * * * and adding : " This rule has been changed by statute in several of the States, which allow compensation to defendants even in actions of ejectment when the land is recovered from them, for the betterments which they have added to the land."

It will be seen that the statute of Illinois has changed the rule; but as we have shown it fails to cover a case like the one at bar, and outside of that there is no remedy. And in this case there is no element of fraud, as we have shown. Graeme v. Cullen, 23 Gratt. (Va.) 266, 298; Dawson v.

Grow, 29 W. Va. 333; 2 Kent's Com. 333, 338; Chambers et al. v. Jones, 72 Ill. 275.

We are of the opinion that the bill can not be maintained. The court below therefore erred in passing the decree against the appellant, requiring him to pay appellee $1,750 for betterments on the lots. The decree of the court below is therefore reversed and the cause remanded to the court below with directions to dismiss the bill.

*Reversed and remanded with directions.*