(No. 33726.—

LEO W. POPE, Appellant, *vs.* THEODORE M. SPEISER *et al.* Appellees.

*Opinion filed November 23, 1955*

OMER POOS, of Hillsboro, for appellant.

BULLINGTON & BULLINGTON, of Hillsboro, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Plaintiff appeals directly to this court from a decree of the circuit court of Montgomery County dismissing for want of equity his complaint for specific performance of an alleged verbal contract by defendants to convey or to devise certain real estate and for other relief. The right to a freehold in real estate being directly in issue, the appeal properly comes direct to this court.

Plaintiff's complaint alleged that the defendant Theodore M. Speiser was the owner of record of a certain specifically described 120-acre farm in Montgomery County, excepting therefrom certain coal, oil and gas rights; that the defend-

ant Elsie M. Speiser is his wife; that the defendant Beulah A. Pope is the wife of plaintiff; and that the defendants LeRoy M. Martin and Audrey A. Martin, his wife, are the vendees in a certain contract for the sale of said land dated July 9, 1954, and recorded in the recorder's office of Montgomery County, wherein the defendants Theodore M. Speiser and his wife are the vendors and the purchase price is $37,800, payable $500 down, $5000 at the time of settlement between Theodore M. Speiser and Leo W. Pope of their controversy as to improvements on said property, and the balance in certain yearly installments. The complaint further alleges that the plaintiff, after his marriage to the defendant Beulah A. Pope moved on to the farm as a tenant under a lease with the defendant Theodore M. Speiser, wherein plaintiff agreed to pay crop and cash rental; that since said time down through date of filing suit plaintiff has continued in possession of the farm, paid the rentals, fully performed the lease on his part and stands ready and willing to continue to do so; that after plaintiff moved onto the farm, and prior to 1940, the defendant Theodore M. Speiser made and paid for certain improvements; that thereafter the defendant Theodore M. Speiser was without sufficient funds to improve the property as proper husbandry required and promised the plaintiff that if he would make all repairs and improvements to the property that Speiser by his last will would devise the farm to plaintiff and his wife, Beulah A. Pope, after a life estate to Speiser's wife; that upon the making of such promise the plaintiff commenced improving the property and ever since said time to the present date plaintiff has spent from his own funds, for buildings and improvements and for outside labor and for his own labor, the sum of $13,517.74, specifying in detail all such claimed improvements; that plaintiff has no adequate remedy at law to recover such improvements or the cost thereof; that by the said recorded contract of sale by Speiser and his wife

with the Martins said Speisers have shown they are trying to deprive plaintiff of his legal and equitable rights and have breached their contract with the plaintiff; that the defendants Speiser and Martin have each served plaintiff with notices of termination of tenancy and notices to quit on March 1, 1955; that the defendants Speiser and Martin each knew or by the exercise of reasonable care should have known that plaintiff was in possession of the premises and that their rights are inferior to plaintiffs; that defendant Speiser knew by many visits to the farm when plaintiff was making improvements and that defendant Martin knew of such improvements because materials and supplies for the improvements were purchased by plaintiff from Martin; that plaintiff has fully performed his part of the agreement with the defendant Speiser, is in possession of the premises, and, together with his wife, is the equitable owner of the land under the alleged verbal contract; that the only way he can receive adequate and proper relief is in a court of equity; that the defendants Speisers are of considerable age and unless the evidence can be preserved plaintiff will lose his rights by being prevented from testifying concerning the contract in the event of their death.

The complaint demanded the following relief, viz: (1) that the defendant Theodore M. Speiser shall perform his contract; (2) that the defendants Theodore M. Speiser and his wife be required to convey the farm to plaintiff reserving to themselves life estates; (3) that the court take plaintiff's testimony to the end that an order be entered preserving his testimony; (4) that the court perpetually enjoin the defendants Speisers and Martins from breaching or attempting to breach the contract between plaintiff and Theodore M. Speiser and from interfering with plaintiff's rights; (5) that the court enjoin the defendants Theodore M. Speiser and LeRoy M. Martin from proceeding at law to terminate plaintiff's tenancy and

deprive him of use of the land; and (6) that the court enter a decree requiring defendant Theodore M. Speiser to execute a will devising the farm to plaintiff and his wife, reserving a life estate to the wife of Theodore M. Speiser.

The defendants each filed separate answers denying the allegations of the complaint. The answer of defendant Theodore M. Speiser further alleged that any repairs made by plaintiff were made voluntarily without any agreement on his part to repay him for the same or to convey any of the real estate to plaintiff and his wife and that such improvements as were made were for plaintiff's convenience in conducting his farming operations. The defendant Elsie M. Speiser in her answer further alleged that her only interest in the land was as Theodore M. Speiser's wife; that she had no knowledge of the alleged verbal contract ever having been entered into; that she had entered into no such contract herself and that her husband had no authority to make such a contract on her behalf. The defendants the Martins in their answers admitted knowledge of plaintiff's possession but deny they had any information as to the character of any contract between plaintiff and Speiser to convey the premises or relating to improvements thereon. The defendant Beulah A. Pope in her answer averred no knowledge of any contract between plaintiff and Speiser relating to improvements or conveyance and disclaimed any equitable ownership as a result thereof. All answers denied plaintiff's right to the relief prayed.

The evidence, without contradiction, shows that plaintiff was a son-in-law of Theodore M. Speiser and his wife, having married their only child, Beulah; that shortly after his marriage plaintiff took possession of Speiser's 120-acre farm in question as a tenant and has continued in such possession to the present time and has performed all of his duties as tenant, paying an increased cash rental from

time to time. Improvements were made by the plaintiff which ordinarily would not be made by a tenant. The record shows these improvements include a seven-foot basement under the house; a new furnace, stoker and coal bin in the basement; a water system with pump in the house; electric wiring in the basement; a concrete floor in the chicken house and milk house; a new silo; cow-barn improvements; a new loafing shed for the cows; and a brooder house. Checks were introduced in evidence to show the various payments by the plaintiff, and eliminating checks for labor in ordinary repairs, fertilizer, and other things that a tenant might ordinarily do, the checks show payments by the plaintiff totaling $6258. Such sum does not include any pay for the labor of the plaintiff himself, and including the plaintiff's labor and checks for things that sometimes are done by the tenant, the total amount of money paid by the plaintiff runs over $10,000.

The evidence further shows, without contradiction, that these improvements were placed on the premises by plaintiff with the knowledge and consent of the father-in-law and under the repeated statements of the father-in-law that the farm would sometime belong to the daughter and her husband. No other inference can be drawn except that when the improvements were made plaintiff believed, and he had a right to believe, from the statements and actions of his father-in-law, that the farm in question would some day belong to plaintiff's wife, the only child of her father. From statements made by the father-in-law, unless he was guilty of fraudulent deception, the plaintiff was clearly and amply justified in believing that the farm was to belong to his wife. Afterwards something happened that caused the daughter to go back to her parental home. Thereafter the father-in-law contracted to sell the farm in question to the defendants LeRoy M. Martin and his wife, which contract expressly included all the improvements which had been placed on the farm by the plaintiff. The father-in-law

and his vendee then gave notice of termination of plaintiff's tenancy and notice to quit. The net result of the uncontradicted facts gives a picture of unjust enrichment of the defendant Theodore M. Speiser from money paid and expended by the plaintiff, his son-in-law, in the improvement of the premises. Neither the plaintiff nor his father-in-law were expecting this large expenditure for permanent improvements to be a gratuity from the son-in-law to the father-in-law. The plaintiff expected his compensation in his wife and himself ultimately owning the land, and the father-in-law had the same expectation at the time the improvements were made.

However, it further appears from the evidence, and the trial court so found, that the terms of the alleged contract were not definite, certain nor unequivocal. The most that the evidence indicates is that the father-in-law told the plaintiff to go ahead and fix up the farm, that it would be his and his wife's and that the father-in-law was going to will it to them. Repairs and improvements are not specifically mentioned in any of the conversations between them. There is nothing to indicate what type of repairs or improvements should be made or whether there was any limit to them. A time for performance is not mentioned.

From what has heretofore been noted as to the uncontradicted evidence, it seems clear that there is an implied obligation on the part of Theodore M. Speiser to pay for the permanent improvements placed upon the premises by the plaintiff, under the generally accepted rule as stated in 12 Am. Jur., Contracts, sec. 5, p. 501: "There is an implication of a promise to pay for valuable services rendered with the knowledge and approval of the recipient in the absence of a showing to the contrary. A promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service.

A promise to pay for services can, however, only be implied when they are rendered in such circumstances as authorized the party performing to entertain a reasonable expectation of their payment by the party benefitted."

Applying this rule to the evidence, an implied contract on the part of Theodore M. Speiser to pay the plaintiff the reasonable value of the improvements is clearly established.

Under circumstances such as are established in the instant case, the plaintiff is entitled to an equitable lien on the premises for the reasonable value of the permanent improvements he placed on the premises. Neither expected the improvements to be a gratuity and both expected plaintiff to be compensated by plaintiff's wife ultimately owning the land.

The American Law Institute, in Restatement of the Law on Restitution, sec. 161, p. 650, under the topic of "Equitable Lien," on the ground of unjust enrichment, makes comment as follows:

"a. A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant not only by imposing a constructive trust and compelling the surrender to the plaintiff of property held by the defendant (see § 160), but also by imposing an equitable lien upon the property in favor of the plaintiff. In some situations the plaintiff is entitled only to enforce an equitable lien; in others he can at his option enforce either an equitable lien or a constructive trust. Thus, where a person makes improvements upon the land of another under circumstances which entitled him to restitution, he may have an equitable lien upon the land, but he cannot charge the owner of the land as constructive trustee of the land for him and compel the owner to transfer the land to him * * *.

"b. *Enforcement of equitable lien.* Where property is held by one person subject to an equitable lien, the person having the equitable lien can enforce it by a proceeding in equity."

The same authority, in speaking of improvements induced by mistake or wrong, states in section 170, p. 689, as follows:

"Where a person makes improvements upon property of another or otherwise increases its value, being induced by fraud, duress, undue influence, or mistake of such a character that he is entitled to restitution, he is entitled to an equitable lien on the property.

*Comment:*

"a. The rule stated in this Section is applicable where a person renders services in improving or otherwise increasing the value of the property of another, or pays for such services, or supplies materials. If in such a case the improvement cannot be severed from the land or chattels upon which the improvement has been made, and specific restitution is therefore impossible, the owner of the land or chattels cannot be compelled to surrender them, and no constructive trust arises. The person making the improvements, however, may be entitled to restitution of the value of the benefit conferred or the value of what he has expended. The circumstances under which he is entitled to such restitution are stated in §§ 40 and 42. Where he is entitled to such restitution, he is entitled to enforce an equitable lien upon the property improved to secure his right to restitution.

"b. *Measure of recovery.* Where the person who makes improvements upon the property of another is induced to do so by the fraud, duress or undue influence of the other, he is entitled to recover the value of his services or expenditures, and is not limited to the amount of the increase in value of the property (see §§ 151, 152); and he has an equitable lien upon the property for the amount of his claim. Where, however, the improvements are made under a mistake and the owner of the property is not at fault, the person making the improvements, if he is entitled to restitution (see §§ 40, 42), is entitled only to the amount

by which the value of the property is enhanced or preserved (see § 155); and he has an equitable lien upon the property only to this extent."

The foregoing is in effect a restatement of the law of this State as expressed in *Olin* v. *Reinecke*, 336 Ill. 530. There the plaintiff had purchased a lot No. 33 and by mistake improved lot No. 34 with a house. Suit was brought praying that defendant be ordered to exchange lots or pay plaintiff the fair value of the improvements. This court ordered defendant to pay plaintiff the reasonable value of the improvements, or in event of his failure or refusal to do so that the property be sold and proceeds distributed in satisfaction of the equitable lien. In so holding this court said, beginning at p. 534, as follows:

"The general rule at law is, that if a stranger enters upon the land of another and makes an improvement by erecting a building the building becomes the property of the owner of the land. (*Dooley* v. *Crist*, 25 Ill. 453; *Mathes* v. *Dobschuetz*, 72 id. 438; *Crest* v. *Jack*, 3 Watts, (Pa.) 238; 1 Hilliard on Real Prop. 5.) In equity, however, if the owner stands by and permits another to expend money in improving his land he may be compelled to surrender his rights to the land upon receiving compensation therefor, or he may be compelled to pay for the improvements. In such cases there is always some ingredient which would make it a fraud in the owner to insist upon his legal rights. Such an ingredient may consist in the owner encouraging the stranger to proceed with the improvement, or where one party acts ignorantly and without the means of better information and the other remains silent when it is in his power to prevent the expenditure of the money under a delusion. It has been held in such cases that to permit one to take advantage of the mistake of another would be revolting to every sentiment of justice. (*Clark* v. *Leavitt*, 335 Ill. 184; *Loughran* v. *Gorman*, 256 id. 46; *Bright* v. *Boyd*, 1 Story, 478; 2 Pomeroy's Eq. Jur. sec.

807; Bigelow on Estoppel, sec. 818; Story's Eq. Jur. 490.) The exercise of such a judicial power, however, unless based upon some actual or implied culpability on the part of the party subjected to it, is a violation of constitutional rights. (*Kirchner* v. *Miller*, 39 N. J. Eq. 355.) An error which is the result of inexcusable negligence is not such an error as equity will relieve. *Haggerty* v. *McCanna*, 25 N. J. Eq. 48.

"In Pomeroy's Equity Jurisprudence (vol. 2, sec. 867, p. 1782,) it is said: 'Now, the effects of a pure mistake upon the rights of the suffering party are the same as injuries and call as loudly for relief as those of fraud. Furthermore, although in the original mistake there is no element of immorality, yet afterwards, when the mistake is discovered and the party benefited insists upon retaining the advantages and refuses to voluntarily correct the error but plants himself upon the strict legal rights which the erroneous writing gives him, there is a very shadowy distinction between the immoral character of his conduct and that of a person who intentionally, by means of representations and concealments, induces another to enter into an agreement; and for this reason we find judges constantly describing the conduct of persons in such a situation, who insist upon holding the advantages accidently obtained by mistake, as fraudulent, and the persons themselves as guilty, from a moral point of view, of virtual, if not actual, fraud."

From the foregoing we conclude that there was an implied contract on the part of the defendant Theodore M. Speiser to pay plaintiff the reasonable value of the permanent improvements placed on the premises by the plaintiff, payment of which is secured by an equitable lien on the premises in favor of plaintiff. Such findings are clearly supported by both allegations of fact contained in the complaint and the evidence presented to the trial court on the hearing of the case.

However, the specific prayers for relief in the complaint were for performance of the contract, a conveyance preserving the life estate, perpetuation of testimony, an injunction restraining breach of contract, an injunction restraining an action at law to terminate possession, and specific performance of an oral contract to devise property reserving a life estate. To justify a decree for specific performance of an oral contract to convey or devise real estate, the proof of the contract must be clear, conclusive and so convincing as to leave no reasonable doubt in the mind of the court and it must be made to appear that the terms of the contract are certain, definite and unequivocal. (*Ellis* v. *Wichams,* 414 Ill. 99; *Tess* v. *Radley,* 412 Ill. 405; *Wilger* v. *Wilger,* 409 Ill. 58; *Hickey* v. *Hickey,* 374 Ill. 614; *Williams* v. *Corcoran,* 346 Ill. 105; *Kane* v. *Hudson,* 273 Ill. 350; *Lonergan* v. *Daily,* 266 Ill. 189.) Since, from what has heretofore been noted, proof of the alleged oral contract to convey or to devise was not sufficiently certain, definite and unequivocal to warrant a decree of specific performance under the above rule, the trial court was correct in denying such specific relief and the injunctive relief incidental thereto.

However, from what has heretofore been stated, the plaintiff in this case under his complaint and proof has established rights against the defendant in the enforcement of which he is entitled to an equitable lien on the premises in question. Such relief is not specifically prayed and the question remains whether or not under the Civil Practice Act of Illinois the plaintiff is entitled to such relief in the instant case.

Section 34 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 158,) provides as follows: "Every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself entitled. * * * Except in case of default, the prayer for relief shall not be deemed to limit the relief obtainable

but where other relief is sought the court shall, by proper orders, and upon such terms as may be just, protect the adverse party against prejudice by reason of surprise."

Section 33(3) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 157,) provides: "Pleadings shall be liberally construed with a view of doing substantial justice between the parties."

Section 42(2) and (3) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 166(2),(3)) provides: "(2) No pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet. (3) All defects in pleadings, either in form or substance, not objected to in the trial court shall be deemed to be waived."

All of these sections must be construed together. It is well established under the former general equity practice that the fact that the complaint may not have contained a specific prayer for establishment of an equitable lien does not deprive the court of equity of the right to enter a decree of such character under a prayer for general relief. Since no such prayer for general relief was included in the complaint, can such relief be granted under our present Civil Practice Act? From a reading of section 34 of the Civil Practice Act it clearly appears to be the legislative intent to authorize the granting of relief not specifically prayed where the allegations of the complaint and the proof supports such relief whether or not the complaint contains a general prayer for relief, provided the court, by proper orders and on just terms, protects the adverse party against prejudice by reason of surprise. In the instant case the allegations of the complaint reasonably inform the defendants that plaintiff was claiming an equitable right to recover the value of the improvements made to defendants' premises.

It is the opinion of this court that the trial court should

have directed the defendant Theodore M. Speiser to perform his implied contract to pay the plaintiff the reasonable value of the permanent improvements placed on the premises by the plaintiff and on his failure or refusal so to do should have ordered the property sold to foreclose plaintiff's equitable lien. Inasmuch as the trial court made no determination of the reasonable value of the permanent improvements placed on the premises by the plaintiff, the case must necessarily be remanded.

Accordingly, the decree of the trial court is affirmed in part and reversed in part, and the cause remanded with instructions to proceed in a manner not inconsistent with the views here expressed.

*Affirmed in part and reversed in part and remanded, with directions.*