DONALD L. WORLEY, Plaintiff-Appellee, Cross-Appellant, *v.* GRACE EHRET, Defendant-Appellant, Cross-Appellee.

Fifth District No. 75-239

Opinion filed January 22, 1976.—Rehearing denied February 27, 1976.

50

Sam S. Pessin, of Belleville, for appellant.

Von Allan Carlisle and William W. Warren, both of Carlyle, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This case and the companion case of *Worley v. Jansen,* 36 Ill.App.3d 60, 343 N.E.2d 246, arise out of the same or closely related facts. The issues in the two cases are substantially the same and oral argument was consolidated. Therefore, although separate opinions are being filed in

the two cases, the discussion of the facts and the issues as set out herein will be applicable, except where noted otherwise, to the opinion in *Worley v. Jansen.*

Plaintiff, Donald L. Worley, brought a forcible entry and detainer action against defendant, Grace Ehret, because of her occupancy of a portion of land belonging to plaintiff. The court awarded possession of the land to plaintiff and allowed defendant slightly over five months to remove a clubhouse and other improvements which had been placed on the land by defendant and her deceased husband, Steve Ehret. Defendant has appealed and plaintiff has cross-appealed.

Plaintiff is the owner of a tract of land of approximately 136 acres in Clinton County. Previously title to the land had been held in joint tenancy by plaintiff's parents since 1954 or 1955 and prior to that time by plaintiff's maternal grandfather since 1912. In January 1968 plaintiff's father died, and in March 1968 plaintiff's mother, being the surviving tenant, conveyed title to the property to plaintiff.

Of the 136 acres 55 or 65 were tillable and for 25 years or more the Worleys had had a tenant on the land who took care of planting and harvesting crops. Neither plaintiff nor his parents had lived on the land during that period.

In the fall of 1969 plaintiff received a notice from the office of the Agriculture Stabilization and Conservation Service, a Federal agency, to come into that office to discuss wheat allotments for the land. While he was there, plaintiff's attention was called to an aerial photo map so that he might point out where he had planted and where he intended to plant wheat. As a result of viewing the map, it appeared to plaintiff that several buildings (which he knew to be clubhouses or cottages of the Ehret, the Jansen, and the Robben families) were on his land. In May 1970 plaintiff approached these parties concerning the possible problem; however, no solution was forthcoming. Thereafter, in June 1970, plaintiff employed a land surveyor to determine the boundaries of his land and to discover whether the clubhouses were, in fact, within those boundaries.

The survey was completed in February 1971 and showed that defendant occupied a parcel of land consisting of approximately 30,000 square feet, three-fifths of which was within the boundaries of the Worley property; that the Robbens occupied approximately 20,050 square feet, four-fifths of which came within the boundaries of the Worley property; and that the Jansens occupied approximately 66,000 square feet, slightly less than half of which came within the Worley boundaries. In each case a clubhouse had been built on that portion of the land which came within the Worley property lines. The survey also revealed that each of these three parties held deeds to land consisting of the same number of square

feet as that which they occupied but which was totally within the Worley boundaries and some distance from the land which each party actually occupied. The following map illustrates the relative locations of the various pieces of property concerned.

The circumstances under which defendant came to occupy the parcel of land here involved and to hold a deed to the parcel of land which is completely within the Worley boundaries are as follows. In 1955 a man named Alfred (Pickles) Von Alst executed three deeds which purported to convey three separate parcels of land located entirely within the Wor-

ly boundaries. In each instance of the three deeds made by Von Alst, he took the purchaser to the lot purportedly conveyed and marked off the boundaries by notching trees with an ax. The areas so marked were the parcels of land which eventually came to be occupied by the Robbens, Thomas Jansen, and the defendant and her husband. The property described in each of the three deeds was completely different than the property so marked by Von Alst as indicated by the map. One of these transactions occurred between Von Alst and Wilbert and Celia Sellers in 1955. Later during 1955 the Sellers executed a deed with the same description to the Ehrets and the Ehrets then began to occupy the area which Von Alst had marked off for the Sellers. Although the tract in question is located in a remote, rough, wooded area, neither prior to the purchase and deed nor prior to their occupancy and improvement of the tract did the Ehrets cause a boundary line survey of their tract to be made. This omission was compounded by the fact that they also failed to obtain an abstract of title, title insurance, record title research or any evidence or opinion of any nature which would indicate the worth of the title they acquired. Apparently, no survey or title search was made by the Sellers either.

By a similar sequence of events, although including a greater number of transfers, Jansen and the Robbens eventually came into possession of the land which they occupied while holding, in each case, a deed describing completely different land.

Although it is not clear from the record upon what authority Von Alst claimed the right to make the transfers that he did make, suffice it to say that neither Von Alst nor anyone transferring to Von Alst, could trace his right to convey the land described in these three deeds, or the land marked off by Von Alst, to the Worleys, and defendant was accordingly holding under a spurious title.

On August 19, 1971, plaintiff made written demand for possession on Thomas Jansen and on Henry and Elizabeth Robben. The next day plaintiff made written demand for possession on defendant, Grace Ehret. On November 11, 1971, defendant obtained an injunction in St. Clair County prohibiting plaintiff from proceeding in Clinton County to litigate the issues of title and right to possession of the land claimed or occupied by defendant in Clinton County. On December 10, 1971, plaintiff brought a forcible entry and detainer action in Clinton County seeking possession of the land occupied by Jansen and the Robbens. On May 13, 1974, plaintiff obtained an order dismissing the injunction previously granted defendant in St. Clair County; and, on May 31, 1974, plaintiff made another written demand for possession on defendant. Subsequent, on June 7, 1974, plaintiff brought a forcible entry and

detainer action in Clinton County seeking possession of the land occupied by defendant and seeking compensation for the use of that land during the five years immediately preceding the institution of the action.

In the forcible entry and detainer action out of which the instant appeal arises, defendant, Grace Ehret, asserted in her answer and counterclaim the defense of laches and asked for an injunction restraining plaintiff from interferring with her use of the land and for any other equitable relief deemed appropriate by the trial court. After the trial, but prior to the decision of the court, defendant filed a motion to amend her answer and counterclaim to include a request for an equitable lien. The motion was allowed by the court. On February 2, 1975, the court entered a judgment awarding possession of the land occupied by defendant to plaintiff on July 15, 1975, and allowing defendant until that date to remove the improvements.

Defendant has appealed from the refusal of the trial court to apply the doctrine of laches and the refusal to declare an equitable lien in favor of defendant. Plaintiff has cross-appealed from the trial court's allowing the defendant to remove the improvements.

Several issues have been raised and can be summarized as follows: (1) whether the description of the land in the complaint was sufficient; (2) whether the trial court erred in refusing to apply the doctrine of laches; and (3) whether the remedy afforded by the court's judgment was appropriate.

With respect to the first issue raised, there is merit to defendant's contention that the description of the land in the complaint was not sufficient. The complaint describes an area of land consisting of many acres, whereas the entire area of land occupied by defendant is less than three-fourths of an acre. That portion of the land occupied by defendant which comes within the Worley boundaries is less than half of an acre. (See the dashed line on the above map for the area described in the complaint against defendant, Grace Ehret.)

■■ It is required by statute and well established by case law that the description of the property in an action of forcible entry and detainer must be made with reasonable certainty. (Ill. Rev. Stat., ch. 57, § 5; *Schaumtoeffel v. Belm*, 77 Ill. 567; *Maloney v. Shattuck*, 15 Ill.App. 44; *Preston v. Davis*, 112 Ill.App. 636; *Spoor v. Meyer*, 152 Ill.App. 470.) The normal test of the certainty of the description is whether an officer executing a summons would be able to locate the premises from the description. (*Schaumtoeffel v. Belm; Maloney v. Shattuck; Preston v. Davis.*) It is readily apparent that the description in the complaint against Grace Ehret, covering an area of land many times greater than that occupied by her, falls short of this test.

On the other hand, it is also well established that where the defendant in a forcible entry and detainer action proceeds to trial without objection to the description in the complaint, he will not be allowed to raise the defect for the first time on appeal. *Maloney v. Shattuck*; *Turk v. Elliot*, 69 Ill.App. 451; *Spoor v. Meyer*; *Wolff v. Jurgenson*, 185 Ill.App. 346; *Kraatz v. Workman*, 202 Ill.App. 95 (abstract opinion); cf. *Center v. Gibney*, 71 Ill. 557.

■■ After the trial in the instant case both sides filed briefs in the trial court on the issues involved. In her brief defendant pointed out that the description in the complaint was insufficient. Nevertheless, she made no motion in this regard either prior to going to trial, in her post-trial brief, or at any other time. After pointing out in her post-trial brief the insufficiency of the description in the complaint, she merely asked the court to determine the merits of the case in her favor. As a consequence of her failure to object to the insufficiency of the description before the court below, she has waived consideration of that defect on appeal.

■■ We now turn to the contention that the trial court erred in refusing to apply the doctrine of laches. Initially, we should point out that at one time the law in this State was that equitable defenses were not available in a forcible entry and detainer action. (See *Meyer v. Surkin*, 262 Ill.App. 83; *Cody Trust Co. v. Dittmar*, 272 Ill.App. 167; *Wein v. Albany Park Motor Sales Co.*, 312 Ill.App. 357, 38 N.E.2d 556; *Winitt v. Winitt*, 339 Ill.App. 75, 89 N.E.2d 71; *D. J. Bielzoff Products Co. v. James B. Beam Distilling Co.*, 3 Ill.App.2d 530, 123 N.E.2d 135; *Jordan v. Weston*, 26 Ill.App.2d 498, 168 N.E.2d 809.) However, in recent cases the Illinois Supreme Court has held that equitable defenses may be raised and equitable relief granted in a forcible entry and detainer action according to the provisions of sections 2 and 11 of the forcible Entry and Detainer Act (Ill. Rev. Stat., ch. 57, §§ 2 and 11). (*Rosewood Corp. v. Fisher*, 46 Ill.2d 249, 263 N.E.2d 833; *Jack Spring, Inc. v. Little*; 50 Ill.2d 351, 280 N.E.2d 208.) The appropriate test to apply in determining whether equitable defenses and claims can be made in a forcible entry and detainer action is whether the matters raised thereby are germane to the distinctive purpose of the action. (*Rosewood Corp. v. Fisher*; Ill. Rev. Stat., ch. 57, § 5.) The purpose, as pointed out in *Rosewood*, has been accurately stated in *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 272, 177 N.E.2d 647, 649:

> "Forcible entry and detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession."

In light of these pronouncements, it is clear that the equitable defense of laches and the counterclaim for an equitable lien made by the defendant were appropriate. Both the defense and the counterclaim were germane to the issue of plaintiff's right to possession.

■■ Having said that, however, it does not follow that the court erred in refusing to apply the doctrine of laches. It has long been the rule that laches is a question addressed to the sound discretion of the trial court and the decision of the trial court to apply or not to apply the doctrine will not be disturbed unless a clear abuse of discretion appears. (*Evans v. Woodsworth*, 213 Ill. 404, 72 N.E. 1082; *People ex rel. Cronin v. Cahill*, 118 Ill.App.2d 18, 254 N.E.2d 161; *Krueger & Ashe, Inc. v. Ende*, 2 Ill.App.3d 466, 276 N.E.2d 740.) The determination as to the existence of laches is governed by the particular circumstances of each case, for there is no fixed rule as to what constitutes laches. (*Einsweiler v. Einsweiler*, 390 Ill. 286, 61 N.E.2d 377; *Stehman v. Reichhold Chemicals, Inc.*, 57 Ill.App.2d 40, 206 N.E.2d 299; *Wagner v. David*, 89 Ill. App.2d 243, 231 N.E.2d 662.) Furthermore, an important consideration in determining whether equity will lend its assistance to one seeking its aid is whether it appears that party has used reasonable diligence. *Dustin v. Brown*, 297 Ill. 499, 130 N.E. 859.

In the case presently before us, plaintiff obtained title and the right to possession of the land in question in March 1968. Approximately 1½ years later he discovered that the defendant, Jansen and the Robbens might be occupying a portion of his land. Not long thereafter the survey was made and the suspected intrusions were shown to exist. Thereafter, in August 1971, plaintiff made a demand for possession on defendant, as well as on Jansen and the Robbens. The demands being refused, plaintiff brought suit against Jansen and the Robbens a few months later. Because of the injunction obtained by Grace Ehret, plaintiff was delayed in bringing suit against her until approximately three years later.

■■ Although it is true that plaintiff's predecessors in title by having a survey made could have discovered the intrusions many years prior to the discovery by plaintiff, it is equally true that defendant and her predecessor in "title" could similarly have discovered the invalidity of their deeds and the intrusion upon plaintiff's land prior to purchasing their deed or constructing the clubhouse. Under such circumstances, we find no abuse of discretion in the refusal of the trial court to apply the doctrine of laches.

■■ Our final concern is whether the remedy afforded by the trial court was appropriate. We are of the opinion that it was not. As pointed out previously, plaintiff was awarded possession of the land and the defendant was allowed to remove the improvements which had been

made thereon. The general rule of law is that where a stranger enters upon the land of another without consent of the owner and makes an improvement of a permanent character, such as the construction of a building, the improvement becomes the property of the owner of the land. (*Olin v. Reinecke*, 336 Ill. 530, 168 N.E. 676; *Fitzpatrick v. Allied Contracting Co.*, 24 Ill.2d 448, 182 N.E.2d 183; *Hayes v. Davis*, 307 Ill. App. 440, 30 N.E.2d 521.) However, if such an improvement is made in good faith by one in possession, mistakenly believing himself to be the true owner of the land, and under circumstances reasonably justifying such belief, equity will not hesitate to soften the harshness of the general rule. In such circumstances an equitable lien will be imposed in favor of the person making the improvements. (*Olin v. Reinecke*; *Pope v. Speiser*, 7 Ill.2d 231, 130 N.E.2d 507; *Fitzpatrick v. Allied Contracting Co.*; *Hayes v. Davis*; *Stegeman v. Smith*, 67 Ill.App.2d 451, 214 N.E.2d 597; *Hartman v. Hartman*, 11 Ill.App.3d 536, 297 N.E.2d 203 (abstract opinion); Annot., 57 A.L.R. 2d 263 (1958).) As pointed out by the Illinois Supreme Court in *Pope v. Speiser*, the position of the law in Illinois in this regard has been well stated in the Restatement of Restitution § 161, at 650, and § 170, at 689 (1937). The latter section and the comments set out thereafter state:

"Where a person makes improvements upon property of another or otherwise increases its value, being induced by fraud, duress, undue influence, or mistake of such a character that he is entitled to restitution, he is entitled to an equitable lien upon the property.

*Comment*:

*a.* The rule stated in this Section is applicable where a person renders services in improving or otherwise increasing the value of the property of another, or pays for such services, or supplies materials. If in such a case the improvement cannot be severed from the land or chattels upon which the improvement has been made, and specific restitution is therefore impossible, the owner of the land or chattels cannot be compelled to surrender them, and no constructive trust arises. The person making the improvements, however, may be entitled to restitution of the value of the benefit conferred or the value of what he has expended. The circumstances under which he is entitled to such restitution are stated in §§ 40 and 42. Where he is entitled to such restitution, he is entitled to enforce and equitable lien upon the property improved to secure his right to restitution.

*b. Measure of recovery.* Where the person who makes improvements upon the property of another is induced to do so by the

fraud, duress or undue influence of the other, he is entitled to recover the value of his services or expenditures, and is not limited to the amount of the increase in value of the property (see §§ 151, 152); and he has an equitable lien upon the property for the amount of his claim. Where, however, the improvements are made under a mistake and the owner of the property is not at fault, the person making the improvements, if he is entitled to restitution (see §§ 40, 42), is entitled only to the amount by which the value of the property is enhanced or preserved (see § 155); and he has an equitable lien upon the property only to this extent."

Although this section does not address itself to the situation where, through mistake, the value of the property is enhanced in an amount greater than the value of the services or expenditures of the improver, under such circumstances the improver is entitled only to the value of his services or expenditures. This is consistent with the theory of the equitable lien and is also consistent with the comment to section 42 of the Restatement:

"Where the improver is permitted to recover for the improvements, he is entitled to the reasonable value of his labor and materials or to the amount which his improvements have added to the market value of the land, whichever is smaller." Restatement of Restitution § 42, at 169 (1937).

On the other hand, however, when the improver is awarded compensation for the improvements placed thereon, the true owner is entitled to recover the reasonable value of the use and occupation of the land in an unimproved state. *Breit v. Yeaton*, 101 Ill. 242; *Elder v. Clarke*, 385 Ill. 335, 52 N.E.2d 778; *Hayes v. Davis*.

■■■ The important consideration in these cases, therefore, is whether defendants acted in good faith, that is, under circumstances reasonably justifying their mistaken beliefs concerning their ownership of the land upon which their clubhouses had been built. This same question was discussed by the Illinois Supreme Court in *Clark v. Leavitt*, 335 Ill. 184, 166 N.E. 538, wherein the court stated:

"If a purchaser in good faith and without notice of defects in his title makes improvements on land belonging to another under the honest belief that he is the true owner, he is generally allowed for reasonable improvements which are of a permanent character and of benefit to the estate. [Citations.] Whether he is a purchaser in good faith depends upon whether he had reason to suppose that his title was good. Where parties make improvements upon premises, having notice of the condition of the title, they

have no claim upon a court of equity to be reimbursed for improvements.

* * *

Counsel for appellants earnestly argue that * * * appellants put improvements on the land in the honest belief that they owned it, and are therefore entitled to reimbursement for such improvements. It is the general rule that purchasers of real estate are chargeable with knowledge of the law and with those things appearing in the record of the chain of title. It is the duty of a purchaser of land to examine the record, and he is chargeable with notice of whatever is shown by that record. * * * Appellants, on contemplating the purchase of the property in question in this case, were bound to examine the records to ascertain in whom the title vested. * * * One cannot be said to take title in good faith notwithstanding facts of title of which he is in law held to have constructive notice." (335 Ill. 184, 187, 190-91, 166 N.E. 538, 539-541.)

To the same effect is *Ready v. Ready*, 300 Ill.App. 42, 20 N.E.2d 636. In that case the court pointed out that the problem involved therein had arisen because of a failure to examine either an abstract of title or the title records. The court held that the recording of a deed is constructive notice and is as effectual as actual notice to preclude recovery for improvements placed on the property.

■■ In the instant case the defendant by examining the record of her chain of title would have discovered the spurious nature of her deed. In view of the standard of care required for recovery of the value of improvements mistakenly made on the land of another, as set out in *Clark v. Leavitt*, the instant defendant is not entitled to reimbursement for the improvements on the land owned by plaintiff.

If this result seems harsh, it is a result brought about only by the total lack of care on the part of defendant. Not only did defendant fail to search the record of her chain of title, but also she failed to take any steps to insure that the land which she occupied was the same as the land for which she held a deed.

If defendant has in fact occupied the portion of land for which she held a deed, plaintiff would have been forced to bring an ejectment action rather than a forcible entry and detainer action. Chapter 45 of the Illinois Revised Statutes governs ejectment actions. The Occupying Claimant's Law (Ill. Rev. Stat., ch. 45, §§ 53-62) provides for the compensation of parties who make improvements upon land to which they hold title, when such title is later defeated in an ejectment action. However, the sine qua non for recovery of compensation of improvements

under the Occupying Claimant's Law is that the occupier "show a plain, clear and connected title * * * deduced from the record of some public office." (Ill. Rev. Stat., ch. 45, § 53.) If the defect in the occupier's title is apparent from a reasonable search of the record, the beneficial provisions of the Occupying Claimant's Law are not applicable. (*Montag v. Linn*, 27 Ill. 328; *Mettler v. Craft*, 39 Ill.App. 193.) Moreover, when a party holds title, not "plain, clear and connected," to one parcel of land and mistakenly makes improvements upon another parcel of land to which he holds absolutely no title, he can be in no better position to claim the benefit of the Occupying Claimant's Law than he would have been had he improved the land described in his deed. *Maynard v. Stevens*, 370 Ill. 594, 19 N.E.2d 575.

The defendant in the instant case asked for whatever equitable relief seemed appropriate. Reasonable diligence is essential in seeking relief in equity. (*Jackson v. Anderson*, 355 Ill. 550, 189 N.E. 924; *Nogle v. Nogle*, 53 Ill. App.2d 457, 202 N.E.2d 683.) In the instant case the defendant acted without diligence not only with respect to the purchase of a spurious deed, but also with respect to her occupancy of land which her deed did not describe.

The judgment of the lower court is therefore reversed and the cause is remanded for proceedings consistent with the law as set out herein.

Reversed and remanded.

KARNS, P. J., and G. J. MORAN, J., concur.