2020 IL App (2d) 190446-U
No. 2-19-0446
Order filed February 14, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| GS PROPERTY INVESTMENT GROUP, LLC, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff and Counterdefendant-Appellee, | ) ) ) | |
| v. | ) ) | No. 17-LM-329 |
| ANNA KUCHARCZYK, BARTLOMIEJ KUCHARCZYK, and UNKNOWN OCCUPANTS, | ) ) ) ) | |
| Defendants | ) ) | |
| | ) | Honorable |
| (Anna Kucharczyk and Bartlomiej Kucharczyk, Defendants and Counterplaintiffs-Appellants). | ) ) | Michael J. Chmiel, Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court held that the plaintiff failed to prove its claim for back rent; the appellate court affirmed the trial court's judgment in favor of the plaintiff on the defendants' counterclaim, where Bartlomiej failed to prove the elements of either *quantum meruit* or unjust enrichment and Anna was bound by a written lease.

¶ 2   Defendants and counter-plaintiffs, Anna Kucharczyk and Bartlomiej Kucharczyk (Bart),

appeal an order of the circuit court of McHenry County finding in favor of plaintiff and counter-

defendant, GS Property Investment Group, LLC, following a bench trial for forcible entry and detainer. In the same trial, the court also found against defendants on their counterclaim for unjust enrichment and *quantum meruit*. Defendants appeal that order as well. We affirm in part and reverse in part.

¶ 3                                     I. BACKGROUND

¶ 4     On May 31, 2012, plaintiff and Anna entered into a written lease for residential property located at 9823 Compton Drive, Huntley, Illinois (the property). The lease term was 24 months commencing on June 4, 2012. The first month's rent was $2043. Thereafter, the monthly rent was $2270. Paragraph 4 of the lease provided that Anna's husband Bart and their children were also permitted to occupy the property. Paragraph 10 provided that Anna was responsible for repairs under $5000 and that plaintiff would not honor any charges not specifically authorized in writing. Paragraph 12 provided that the residence was rented in "as-is" condition.  Paragraph 16 was titled "Surrender and Holdover," although that paragraph did not address a holdover situation. However, paragraph 28 A provided that, in the event of default, plaintiff could "continue this Agreement *** and continue to enforce all of Owner's rights and remedies under the terms hereof, including the right to recover the rent specified herein as it becomes due."

¶ 5     Simultaneously with the execution of the lease, plaintiff and Anna executed an "Option to Purchase Property" for $25,000 consideration. The property specified was the Huntley residence, and the ultimate purchase price was $165,000. Anna never exercised the option.

¶ 6     When Anna took possession of the property under the lease, it lacked a furnace, air conditioning, water, hot water heater, flooring, kitchen fixtures, and toilets. The property had been in foreclosure, and plaintiff purchased it from the bank for $145,199. Bart, who was a carpenter

and was also experienced in related trades, began making repairs. Plaintiff did not authorize those repairs in writing.

¶ 7        On May 5, 2017, plaintiff filed an action against Anna, Bart, and "unknown occupants" for forcible entry and detainer. The complaint alleged that the monthly payments were modified to $2400 beginning on April 1, 2015, and that Anna had made "some partial payments" since January 2015. Plaintiff alleged that the total amount of back rent due was $24,610. Anna and Bart both counterclaimed for unjust enrichment and *quantum meruit*, seeking in excess of $20,000 for repairs that they made to the property. On May 23, 2017, defendants surrendered possession of the property.

¶ 8        On December 3, 2018, the matter proceeded to a bench trial on plaintiff's claim for back rent and defendants' counterclaim. Guennadi "Gene" Barshai, plaintiff's manager, was plaintiff's first witness. Barshai testified that defendants asked plaintiff to purchase a property for them. Plaintiff told defendants to find a property. Defendants chose the Huntley property, which was in foreclosure. Plaintiff purchased that property and then entered into a rent-to-buy arrangement with Anna.

¶ 9        Barshai identified the lease and its essential terms. He testified that he increased the rent in April 2015, because past rent payments were "unstable." Also, he said, when the option to purchase expired, the parties commenced a "month-to-month" lease. According to Barshai, other than rent, all provisions of the written lease remained the same. With respect to the option, Barshai testified that Anna paid $25,000 consideration, but because she could not get financing, they never closed the transaction. Under the terms of the option agreement, Anna forfeited the $25,000.

¶ 10        Barshai testified that he kept a ledger showing Anna's rent payments. However, as he testified on direct examination to the various monthly payments contained therein, he became

confused and admitted that his ledger was not accurate. He stated that he would have to look at his computer, which contained all of the information. Barshai then testified that, as of January 1, 2015, Anna was current with rent. He testified that as of the trial date, he thought that she owed "about" $27,000. Barshai said that it would be possible to calculate the exact amount of rent still owed by using the ledger and a calculator. However, he did not perform that function while he was on the witness stand. On cross-examination, Barshai identified a receipt that he gave Anna for $2900 dated March 21, 2012. Barshai did not record that amount in the ledger, nor did he know what it represented. Barshai testified that he allowed Anna to "catch up" when she became delinquent, but that, "from 2015 [on], [she was] never current." Barshai testified that plaintiff eventually sold the property to a third party for $249,000.

¶ 11    Next, plaintiff called Anna as a witness. Anna testified that she spoke Polish and that her English was limited. She admitted that she signed the lease. However, she testified that Barshai "was like the bank for us" and that the monthly rent payment was actually in the nature of a mortgage payment. On cross-examination, Anna testified that the receipt for $2900 that Barshai gave her in March 2012 was for earnest money that she paid at the closing when plaintiff purchased the property from the bank. According to Anna, Barshai gave her and Bart the "okay" to start remodeling the property at the beginning of June 2012. With that, plaintiff rested.

¶ 12    Defendants called Bart as a witness. Bart testified that he was a Polish national living in the United States as a resident. He testified that he was experienced in carpentry, tile work framing, small electrical work, small plumbing work, and "everything around the house." Bart testified that he was currently self-employed. According to Bart, when they moved into the property, it was "doors only, and there was no furnace, no air-conditioning *** no water connected, [and] no gas connected." He also testified that the house had missing toilets, no carpets, part of a hardwood

floor, and no appliances. Bart identified photographs of all the repairs and remodeling that he did in the property. Bart also testified to many outside improvements that he made. Bart testified that his work on the premises was not a "gift" to plaintiff. Bart also testified that Barshai was aware of, and approved, his remodeling.

¶ 13 After Barshai served defendants with the five-day notice, Bart created "invoices" totaling $42,646 for the work that he did to the property. According to Bart, those invoices reflected his labor and material. Over objection, the court admitted the invoices into evidence.

¶ 14 Bart testified that he paid $2500 in rent by check in January 2015 and $4100 in rent in cash in February 2016. He had bank statements showing the withdrawals but not the payee. On cross-examination, Bart testified that he did not ask Barshai for a receipt for the cash because he trusted him. Bart testified that the invoices that he prepared were "pretty much" just his estimates of the work that he performed, the hours of labor, and the cost of materials. Bart admitted that he did not present the invoices to plaintiff for payment. Bart also admitted that he had no contemporaneous documentation of his work on the property. Defendants then rested.

¶ 15 Plaintiff called Barshai as a rebuttal witness. According to Barshai, plaintiff painted and repaired the property after defendants vacated it. Barshai testified that defendants never asserted that they had a mortgage on the property while they were tenants. Barshai also testified that he never authorized Bart in writing to perform any work on the property.

¶ 16 The court analyzed the transaction as a simple lease, as the option to purchase was not at issue. The court found that defendants acquired no ownership interest in the property. The court credited Anna with Bart's payments of $2500 and $4100 and then found that plaintiff was entitled to back rent in the amount of $16,410. The court found in favor of plaintiff and against defendants

on their counterclaim without making any findings, except that Anna was a holdover tenant. Following denial of defendants' motion to reconsider, defendants filed a timely notice of appeal.

¶ 17                                  II. ANALYSIS

¶ 18                          A. Plaintiff's Claim for Back Rent

¶ 19    Anna contends that the court's determination that she owed $16,410 for back rent is against the manifest weight of the evidence. Credibility of the witnesses is a matter for the trial court's determination, and we will not disturb such determination unless it is against the manifest weight of the evidence. *Orchard Shopping Center, Inc. v. Campo*, 138 Ill. App. 3d 656, 665 (1985).

¶ 20    Here, the court based its decision on Barshai's testimony that Anna owed "about" $27,000. The court then gave Anna credit for two rent payments that Bart made. Deducting Bart's two payments totaling $6600 would reduce Anna's arrearage to $20,400. The court did not explain how it arrived at its judgment of $16,400. Anna argues, in part using plaintiff's ledger, that she actually overpaid rent.

¶ 21    Barshai testified that the ledger did not accurately reflect rent payments. He explained that checks bounced and payments were missed and made up, so that the ledger inaccurately reflected a surplus at one point. When plaintiff's counsel asked Barshai whether Anna was current as of January 1, 2015, Barshai answered: "January 1st, I believe close to this. I don't have all information [*sic*]. It's on my computer. But I think it's pretty much the same, they covered everything." Plaintiff's counsel asked Barshai how much Anna owed as of the date of trial, and he answered: "As of this date, about 2700, I think. I cannot—" Then, Barshai corrected the figure to $27,000. He said that he could arrive at that number if he "worked with" a calculator. On cross-examination, Anna's counsel asked Barshai what a receipt for $2900 that he gave Anna in March 2012

represented. Barshai testified that it was not for the closing when plaintiff purchased the property, and then he said that he would have to "take a look at my account to see [what] it was."

¶ 22    We hold that Barshai's testimony was insufficient to establish the amount of back rent. Barshai admitted that his ledger was inaccurate, he did not have all the information, and he could not recall why he had given Anna a receipt for a significant amount of money. When he was asked whether he could figure the back rent with a calculator, Barshai said that he could, but he was not given a calculator and asked to do it. Instead, he testified that he "thought" that Anna owed "about" $27,000.

¶ 23    Recovery for breach of a lease is limited to the amount due at the time of trial. *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 416 (2003). Yet, at trial, Barshai did not know the exact amount due. In *612 North Michigan Avenue Building Corp. v. Factsystem, Inc.*, 54 Ill. App. 3d 749, 753 (1977), the plaintiff's witness's testimony was found credible where there was no "suggestion that he used the wrong figures in arriving at his computation of the rent due and owing." *Factsystem*, 54 Ill. App. 3d at 753. Here, by Barshai's own admission, the figures on his ledger were wrong, and he could arrive at a correct computation only by looking at his computer, which he did not have available, or by using a calculator on the witness stand, which he did not do. Moreover, after giving Anna credit for $6600, the court found that she owed $16,410. The record does not show where that figure came from, as a deduction of $6600 from $27,000 leaves $20,400. Accordingly, we determine that the court's finding that Anna owed $16,410 in back rent is against the manifest weight of the evidence.

¶ 24                                    B. The Counterclaim

¶ 25    Plaintiff argues that defendants cannot sue in quasi-contract because they had a written lease. Generally, where parties have an express contract, there can be no quasi-contractual

recovery. *Stark Excavating, Inc. v. Carter Construction Services, Inc.*, 2012 IL App (4th) 110357, ¶ 38. That is certainly true of Anna. However, Anna maintains that the lease terminated in June 2014 and that there was no provision for a holdover.

¶ 26    The court found that Anna was a holdover tenant. We agree. Anna ignores paragraph 28 A of the lease, which provided that, in the event of a default, plaintiff could "continue this Agreement *** and continue to enforce all of Owner's rights and remedies under the terms hereof, including the right to recover the rent specified herein as it becomes due." Barshai testified that he elected to treat Anna as a holdover tenant under all of the provisions of the lease. If a lessee holds over after the expiration of a lease, the lessor has the right to decide whether to treat the lessee as a holdover tenant. *Bransky v. Schmidt Motor Sales, Inc.*, 222 Ill. App. 3d 1056, 1061 (1991). In the absence of contrary evidence, there is a presumption of a holding over under the terms of the original lease. *Bransky*, 222 Ill. App. 3d at 1061.

¶ 27    Then, when plaintiff increased the rent in April 2015, and Anna stayed in the premises, she assented to that new term, but was subject to the original lease as amended by that term. See *Sheriff v. Kromer*, 232 Ill. App. 589, 593 (1924) (if holdover tenant remains after notice of a change in terms, he or she is treated as subject to the original lease as amended by such notice). Despite Anna's testimony that her monthly payments were mortgage payments, she remained a tenant and never became a vendee, because she never effectively exercised the option to purchase the property. See *Chapman v. Brokaw*, 225 Ill. App. 3d 662, 667-68 (1992) (defendants remained renters because of their failure to exercise option to purchase).

¶ 28    Bart, however, was not a party to the lease. Nevertheless, plaintiff argues that Bart's counterclaim fails, because (1) Bart was an "integral part" of the lease transaction and should be

bound by the term of the lease that allowed plaintiff to retain all fixtures, (2) Bart improved property knowing that he did not own it, and (3) Bart did not prove damages.

¶ 29 The court made no factual findings with respect to the counterclaim, other than Anna was a holdover tenant. The court also commented that defendants did not allege any fraud or wrongdoing on plaintiff's part. The facts are not in dispute. In sum, defendants entered into a transaction for the purchase of a single-family dwelling that allowed them to skirt traditional mortgage requirements. (Anna testified that Barshai was like the bank.) However, in so doing, defendants also gave up any consumer protections that might attach to a traditional transaction. For instance, as a condition of extending financing to a buyer, the government can require a seller to make repairs. *Dodson v. Nink*, 72 Ill. App. 3d 59, 63 (1979). In consequence of defendants' decision to bypass conventional financing, Bart undertook to restore the premises himself. He now looks to equity for relief. Where there is an obligation or duty and a receipt of a benefit related to such duty, the law may imply a promise to pay from the circumstances or the relation of the parties. *Arthur Rubloff & Co. v. Drovers National Bank of Chicago*, 80 Ill. App. 3d 867, 875 (1980). Such a promise is fictitious, and it arises by implication of law wholly apart from the usual rules relating to contracts. *Arthur Rubloff*, 80 Ill. App. 3d at 875. This "promise" exists where there is a "plain duty and a consideration." *Arthur Rubloff*, 80 Ill. App. 3d at 875.

¶ 30 Bart counterclaimed for *quantum meruit* and unjust enrichment. "Unjust enrichment" is not a separate cause of action that, standing alone, justifies an action for recovery. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1024 (2009). Rather, the doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies. *Martis*, 388 Ill. App. 3d at 1024. "Unjust enrichment" is a "condition" that results from unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a

cause of action based upon that improper conduct. *Martis*, 388 Ill. App. 3d at 1024. When an underlying claim of fraud, duress, or undue influence is deficient, a claim for unjust enrichment fails. *Martis*, 388 Ill. App. 3d at 1024. For a cause of action based on unjust enrichment to exist, the plaintiff must establish a duty on the part of the defendant to act and the defendant's failure to meet that duty. *Martis*, 388 Ill. App. 3d at 1025.

¶ 31    "*Quantum Meruit*" exists in the absence of a contract, and it describes a cause of action seeking recovery for the reasonable value of services nongratuitously rendered. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 60. To recover under *quantum meruit*, a plaintiff must prove that (1) it performed a service to the benefit of the defendant, (2) it did not perform gratuitously, (3) the defendant accepted the service, and (4) no written contracted existed that prescribed payment for the service. *Jameson*, 2018 IL App (1st) 171534, ¶ 60. In addition to the above discussion, *quantum meruit* is distinguished from unjust enrichment in the way damages are calculated. *Jameson*, 2018 IL App (1st) 171534, ¶ 60. In an action for *quantum meruit*, the measure of damages is the reasonable value of the work and material provided. *Jameson*, 2018 IL App (1st) 171534, ¶ 60. In a claim for unjust enrichment, recovery is limited to the benefit acquired. *Herbert W. Jaeger & Assoc. v. Slovak American Charitable Assn.*, 156 Ill. App. 3d 106, 111 (1987). After a bench trial, the court's findings of fact will not be disturbed unless they are against the manifest weight of the evidence. *Jameson*, 2018 IL App (1st) 171534, ¶ 59.

¶ 32    We first address plaintiff's contention that Bart should be bound by the lease. Plaintiff cites no authority for its argument that equity and good conscience can bind a nonsignatory to a lease. Consequently, plaintiff has forfeited this argument. See *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 62 (failure to cite relevant authority results in forfeiture of the argument). We next address Bart's contentions.

¶ 33                                            1. *Unjust Enrichment*

¶ 34    Bart relies on one case, *Pope v. Speiser*, 7 Ill. 2d 231 (1955). In *Pope*, the plaintiff married the defendant's daughter, and the newlyweds took possession as tenants of a farm owned by the defendant. *Pope*, 7 Ill. 2d at 235. With the defendant's knowledge and consent, and upon the defendant's repeated statements that the farm would someday belong to the plaintiff's wife, the plaintiff made extensive improvements to the property using his own money. *Pope*, 7 Ill. 2d at 236. Then, the plaintiff's wife went back home to her parents. *Pope*, 7 Ill. 2d at 236. The defendant contracted to sell the farm with all its improvements to a third party, and the defendant terminated the plaintiff's tenancy. *Pope*, 7 Ill. 2d at 236-37. The plaintiff sued for specific performance of what he claimed was the parties' contract for the defendant to leave the farm to the plaintiff's wife. *Pope*, 7 Ill. 2d at 234-35. The trial court denied relief on the ground that the alleged contract was not sufficiently definite and certain. *Pope*, 7 Ill. 2d at 242. Our supreme court agreed that the contract was too vague but held that the plaintiff was entitled to an equitable lien on the property. *Pope*, 7 Ill. 2d at 242. The supreme court held that the uncontradicted facts proved unjust enrichment and that neither party expected the plaintiff's expenditures to be a gratuity. *Pope*, 7 Ill. 2d at 237.

¶ 35    *Pope* is readily distinguishable from the present case. Here, plaintiff made no promises to Bart concerning Bart's future ownership of the property. Bart's only expectation was that Anna would own the property if she exercised the option to purchase. Defendants never suggested that Anna's failure to exercise the option was procured through plaintiff's fraud. Indeed, some 30 pages of emails between Anna and Barshai establish that Barshai was eager, almost desperate, to schedule the closing because he had his own financial obligations to meet, but Anna could not get financing.

¶ 36    Plaintiff relies on *Worley v. Ehret*, 36 Ill. App. 3d 48 (1976). In *Worley*, the defendant occupied an improved tract of land, pursuant to a spurious deed, that was within the boundaries of the plaintiff's property. *Worley*, 36 Ill. App. 3d at 51. The appellate court held that the defendant was not entitled to the value of her improvements, because she acted in bad faith in failing to examine her chain of title and in failing to ascertain that the land which she occupied was the same as that described in her deed. *Worley*, 36 Ill. App. 3d at 59. Here, plaintiff concludes that Bart similarly acted in bad faith when he made the improvements without ascertaining that Anna did not own the property. As noted, both Anna and Bart testified that the rent payments were mortgage payments, indicating that they thought that they owned the property. However, if they sincerely held that belief, it was not justified. The transaction between plaintiff and Anna unequivocally was a lease with an option to buy. Anna's emails show that she understood the contractual arrangement. Nor could Anna have believed that she exercised the option where her own emails acknowledged her inability to close for lack of financing. Apart from the contract provisions, plaintiff made no other promises that defendants would someday own the property. Accordingly, we cannot say that the trial court's judgment in favor of plaintiff on the unjust enrichment count of the counterclaim was against the manifest weight of the evidence.

¶ 37                                   2. *Quantum Meruit*

¶ 38    As noted, to recover under *quantum meruit*, a plaintiff must prove that (1) it performed a service to the benefit of the defendant, (2) it did not perform gratuitously, (3) the defendant accepted the service, and (4) no written contracted existed that prescribed payment for the service. *Jameson*, 2018 IL App (1st) 171534, ¶ 60. Bart argues that he proved all four elements. Plaintiff disputes that Bart proved that he did not perform gratuitously. Plaintiff argues that, while Bart

testified that his improvements were not a gift, he also testified that he never sought payment until after defendants were evicted. Plaintiff also argues that Bart failed to prove damages.

¶ 39    Even if Bart's improvements were not gratuitous, we agree that he failed to prove damages. In a *quantum meruit* claim, recovery is limited to the reasonable amount that the defendant was enriched at the expense of the plaintiff. *Jameson*, 2018 IL App (1st) 171534, ¶ 64. The plaintiff must provide a basis for assessing damages with a "fair degree of probability." *Jameson*, 2018 IL App (1st) 171534, ¶ 64. Uncontroverted testimony regarding amounts paid is admissible as proof of damages. *Mor-Wood Contractors, Inc. v. Ottinger*, 205 Ill. App. 3d 132, 144 (1990). Here, Bart did not have any receipts for the materials that he used in making the improvements. Nor did he keep contemporaneous time and material records. The "invoices" that he created after the eviction were made in anticipation of litigation, and he admitted that they were just estimates. This is in contrast to *Mor-Wood*, where the plaintiff's bookkeeper testified to expenditures that were recorded in a ledger contemporaneously with the transactions. *Mor-Wood*, 205 Ill. App. 3d at 143-44. Accordingly, we determine that the court's judgment in plaintiff's favor on the *quantum meruit* count of the counterclaim is not against the manifest weight of the evidence.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment in plaintiff's favor on the counterclaim, and we reverse the judgment on plaintiff's complaint for back rent.

¶ 42    Affirmed in part; reversed in part.