## George A. Montag, Plaintiff in Error, v. James J. Linn, Defendant in Error.

### ERROR TO ADAMS.

The statute for the protection of occupying claimants is designed to protect those who shall in good faith take peaceable possession of vacant land under such a paper title as the records of the county show to be plain, clear and connected, and without notice of any adverse title of record.

The protection of a party under this statute does not depend upon the original deeds through which he deraigns his title being regular upon their face; such deeds may contain material alterations, or be forgeries, and yet the purchaser may be protected, where the records of the county show a clear chain of title.

THIS was an application made to the Circuit Court of Adams county, by the plaintiff in error, for the appointment of commissioners to assess the value of lasting improvements made by him upon land which the defendant in error had recovered of him in ejectment. The court overruled the motion, to which the plaintiff in error excepted, and has brought the case to this court. The ejectment suit between these parties was tried at the January term, 1860, of this court.

The opinion of the Court gives a full statement of the case.

GRIMSHAW & WILLIAMS, for Plaintiff in Error.

WHEAT & GROVER, for Defendant in Error.

BREESE, J. On a recovery in ejectment by the defendant here, against the plaintiff in error, of a tract of land in Adams county, the unsuccessful party entered his motion in the Circuit Court of that county, for the appointment of commissioners to value such lasting improvements as he had made upon the land, and, also, for an order to stay the issuing of a writ of possession until such valuation could be made and the amount thereof paid to him. The plaintiff in error relied on the provisions of that part of chapter 36, respecting "occupying claimants." (Scates' Comp. 220.) Due notice was given of the motion, and proof submitted that the plaintiff had made valuable and lasting improvements on the land, prior to the bringing the suit, by which he was ejected. The plaintiff showed as title to the land: First, A patent from the United States, dated Feb. 26, 1818, to one John Silver, a private in McIntosh's company of light artillery. Second, A deed from John Silver to John B. Cofield, dated in January, 1850, recorded in Adams county, Feb. 26, 1850. In this deed there was an alteration which this court held to be material, and rejected it, on a trial in this court. Third, The defendant read in evidence deed duly executed, purporting to convey the title from Cofield to the plaintiff, which was on record in the proper office in Adams county, without any notice to plaintiff of defendant's paramount title. He also proved that he had obtained peaceable possession of the land.

The defendant here, in opposition to the motion, proved paramount title to the land, by showing the original patent from the United States to John Silver; also, a deed from John Silver, dated Jan. 11, 1855, to Albert M. Noyes, recorded Jan. 24, 1856, in Adams county, and a deed from Albert M. Noyes to him, the defendant, dated Feb. 1, 1856,

22

also recorded in Adams county. He also showed the deposition of John Silver, taken in the ejectment cause, who testified that he was the patentee, and that he never made any deed to Cofield, and if any such deed was in existence, it was a forgery.

The court, thereupon, overruled the motion, and refused to appoint commissioners or grant a restraining order, to all which the plaintiff here excepted, and brought the case here by writ of error, assigning for error, this refusal of the Circuit Court.

The material provisions of our "occupying claimant" law, bearing on this case, are the forty-seventh and forty-eighth sections (Scates' Comp. 220), the first of which provides "that every person who may be evicted from any land for which he can show a plain, clear and connected title in law or equity, deduced from the record of some public office, without actual notice of an adverse title, in like manner derived from record, shall be exempt and free from all and every species of action, suit or prosecution, for or on account of any rents, or profits, or damages, which shall have been done, accrued or incurred, at any time prior to receipt of actual notice of the adverse claim by which the eviction may be effected, provided such person obtained peaceable possession of the land." The forty-eighth section prescribes the manner of the appointment of the commissioners to assess the value of the improvements, and their whole duty in the premises, which it is not necessary to specify in detail. The question here is, did the plaintiff in error show a plain, clear and connected title in law or equity, deduced from the record of some public office, without actual notice of an adverse title in like manner derived from record?

The defendant in error, the successful party in the ejectment, contends that no such title was shown, and consequently the appointment of commissioners was properly refused—that the deed from the patentee to Cofield, through which he derived his title, and indispensable to its support, bore upon its face unmistakeable evidence of a material alteration, and so glaring as to excite the suspicion of any reasonably cautious man with regard to it. That taking possession of the land, under such a deed, was not in good faith, and did not make out a plain, clear and connected title. It is quite apparent, that it is not the design of the law to provide for cases in which an apparently good title may have been compelled to yield to a paramount title, and so the counsel for the defendant in error admitted on the argument. He admitted, that an ejected party is protected, who has a clear "set of title

papers," not a good title, but who has "a *prima facie* apparent title," obtained in good faith, and who is a *bona fide* possessor under it.

We apprehend the statute designs to protect all persons, who, in good faith, shall take peaceable possession of vacant land under such a paper title as the records of the county show to be plain, clear and connected, and without notice of any adverse title of record.

It would not seem to be important that the original deeds through which the title is deraigned, should be clear on their face, but only that the records of the public office to which resort is had, should, upon their pages, show "a plain, clear and connected title." Lands are often bought and sold without reference to the original deeds, resort being had to the records of the county, and it is quite probable the plaintiff here, never saw the altered deed, but only the record of it, which would not show any alteration. His title, as deduced from the records of a public office, was plain, clear and connected, with no flaw in it, and it is only by inspection by the court of the original, that the alteration is manifested. The alteration itself was considered by counsel learned in the law to have been an unimportant one, as there were other words in the deed, which without the alteration, they supposed would have conveyed the land. If then, the original deed had been submitted to the plaintiff, who appears to be a person not acquainted with our language, or to counsel employed by him, it is quite probable he and they would have considered the deed unobjectionable by reason of the alteration. But the statute does not require that the title papers shall be perfect on their face, it only requires the records to show a plain, clear and connected title—so that, though a forged deed, placed on record, the party claiming under it, ignorant of the forgery, and having no notice of it, would be protected by this law, to the extent of the value of his lasting improvements. The records show a title *prima facie* good, and comes up to one of the admissions of the defendant's counsel. He may have no other set of title papers except such as the public records afford him.

The deposition of Silver was an after proceeding, of which the plaintiff had no knowledge until the trial of the ejectment suit. He could not know from the records, the fact, the deposition discloses, and is not chargeable with that knowledge. From the records, and by the records, the title was plain, clear and connected. His possession was taken peaceably under his title, with no notice of any adverse title, and he has, therefore, a right to have commissioners appointed to value his

lasting improvements made before notice of the paramount title, and to such other benefits as the statute confers.

The statute is of an equitable character, and seems designed to protect all persons, who shall be so unfortunate as to lose land, upon which they have entered in good faith, with no knowledge of any adverse or better tittle than they possessed, they themselves showing a plain, clear and connected title in law or equity, deduced from the record of some public office. There is so much justice and equity in such a statute, that assent is rendered to it instinctively. The judgment is reversed, and cause remanded, with directions to appoint commissioners, as moved, and also to enter an order staying the issuing of a writ of possession until such valuation shall be made, and the amount thereof paid to the plaintiff in error, should anything be due.

*Judgment reversed.*