NOTICE
Decision filed 12/11/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240892-U

NO. 5-24-0892

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| LK COMMERCIAL INVESTMENTS, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 23-EV-450 |
| | ) | |
| ALBI EXPRESS, LLC, and | ) | |
| UNKNOWN OCCUPANTS, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*:     The trial court's judgment in favor of defendant on plaintiff's claim for eviction and possession was not against the manifest weight of the evidence, and the court did not abuse its discretion by applying equitable defenses against plaintiff's claim. Further, the trial court did not err by denying plaintiff's motion to reconsider.

¶ 2     The plaintiff, LK Commercial Investments, LLC, (LK) appeals the March 13, 2024, and July 8, 2024, orders of the circuit court of Madison County in favor of defendants, Albi Express, LLC (Albi), for LK's claim for eviction and possession of the subject premises. LK raises three issues on appeal. First, LK argues that the trial court's finding in favor of Albi as to LK's claim for eviction and possession of the subject premises was against the manifest weight of the evidence. Second, LK argues that the trial court abused its discretion by applying the equitable defenses of laches, estoppel, and waiver. Finally, LK contends that the trial court erred by denying LK's

1

motion to reconsider the March 13, 2024, order. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On October 10, 2019, LK and Albi entered into a triple net lease agreement for three parcels of property commonly known as 3 Caine Drive, Madison, Illinois (subject premises). LK leased the subject premises to Albi for the operation of a trucking company. Pursuant to the lease agreement, Albi was to pay monthly rent on the first of each month during its tenancy. Rent included monthly "Base Rent" of $5,790, triple net expenses, and "Bonus Rent" of 50 cents per square foot received by defendant from any subtenant (not to exceed $2,232.00). Section 2.6 of the lease agreement authorized LK to charge a late fee equal to 5% of any delinquent rent payment. The lease agreement defined any late fees incurred as "Additional Rent" and included "Additional Rent" in its definition of "Rent." The lease agreement contained a purchase option which granted Albi the exclusive option to purchase the subject premises.

¶ 5        On June 5, 2023, LK filed a complaint for forcible entry and detainer, alleging Albi breached the terms of the lease agreement in that Albi failed to pay timely rent. LK alleged that it provided Albi with two notices of default pursuant to the terms of the lease and that Albi failed to cure its default. LK also alleged that Albi was in default under the terms of the lease by failing to furnish proof of commercial general liability insurance, failing to properly maintain and repair the building, and failing to request approval for improvements made to the building. LK further alleged that it was entitled to possession of the subject premises, and at the time of filing the complaint, Albi owed a total of $3,931.71 in late fees. LK attached to its complaint: the triple net lease agreement; first amendment to the lease agreement; the notice of past due rent dated April 13, 2023; the notice of default dated April 27, 2023; and, the 10 day notice dated May 15, 2023.

2

¶ 6    Albi filed an answer on July 5, 2023. Albi denied that it was in material breach of the terms of the lease, denied that late fees continued to accrue under the lease, and asserted that it was current on its rent payments. Albi denied that it failed to cure its default. Additionally, Albi denied that it was also in default for failure to furnish proof of insurance, failure to properly maintain and repair the building, and failure to request approval for improvements made. Albi denied that LK was entitled to possession, and lastly, denied it owed $3,931.17 in accrued late fees.

¶ 7    In support of its position, Albi asserted that it paid any accrued late fees by electronic transfer on or about June 11, 2023. In addition to its answer, Albi asserted the affirmative defense of laches, and stated: "Plaintiff complains of alleged conduct by Defendant that goes back to the beginning of the lease in 2019. Defendant has remedied any alleged defaults under the terms of the lease." Further, Albi asserted the affirmative defense of anticipatory repudiation/breach of contract, and asserted LK sought to terminate the lease so that it could "sell the subject real estate to another party for a substantially greater amount than it would be obligated to do so with respect to Defendant." On November 14, 2023, Albi added the affirmative defense of "set off", and alleged Albi was entitled to reimbursement because Albi paid $1,140 per month for LK's insurance coverage, but LK was only incurring $4,809 in annual insurance expenses.

¶ 8    The matter proceeded to a bench trial on November 16, 2023. LK called Alex Klemme as its first witness. Klemme testified that he is the managing member of LK Commercial Investments, LLC. He testified that as managing member, his duties are to operate the daily course of business, including managing the business' properties and tenancies, and keeping track of rent payments. Klemme testified that he is familiar with the tenancy between LK and Albi.

¶ 9    Klemme testified that the lease agreement between LK and Albi commenced in late 2019. He stated that Albi's monthly rent under the lease agreement was approximately $10,000, which

3

included base rent, additional rent, and bonus rent. Klemme testified that pursuant to the lease agreement, monthly rent was due on the first day of each month. Klemme stated that pursuant to the terms of the lease, LK assessed a 5% late fee on delinquent rent. Klemme also testified that the lease agreement required all amendments to be made via written agreement between the parties.

¶ 10    Klemme testified that LK sent a past due notice and a demand for rent and late fees dated April 13, 2023, along with an attached ledger of payment history from April 2022 to April 2023. Klemme stated that the ledger demonstrated "that payments were commonly past due and at that time that this notice was provided that they are behind rent. There's a past due amount of $26,000." Klemme stated his affidavit of notice demanded $26,159.84 of past due rent along with a 5% fee on delinquent payments in the amount of $3,412.14. Klemme further testified that LK sent a five-day notice for demand to pay rent or vacate the property, dated April 27, 2023. He stated as of the date of that notice, $14,785.99 of rent remained outstanding. Klemme stated that the April 27, 2023, notice also included a late fee on delinquent payments in the amount of $3,412.14. Klemme testified that Albi did not pay the outstanding amount within five days.

¶ 11    Klemme testified that LK sent another notice of default, dated May 3, 2023, that informed Albi they were past due on rent and demanded payment. Klemme stated the amount demanded in the May 3, 2023, notice was $14,785.99, which was the same amount demanded in the April 27, 2023, notice. Klemme testified that this amount included $3,412.14 of late fees.

¶ 12    Klemme testified that section 18 of the lease agreement included Albi's failure to pay rent after a five-day notice as an "event of default." Klemme testified that pursuant to section 19 of the lease agreement, in the event of a default, LK was entitled to repossess the premises and terminate the lease. Klemme further testified that Albi did not maintain commercial general liability insurance coverage as required by section 9.1 of the lease agreement. Klemme stated that pursuant

4

to the terms of the lease agreement, Albi was obligated to procure its own commercial general liability insurance, in addition to LK's obligation to procure coverage for itself. Klemme testified that pursuant to section 18.5, Albi was in default of the lease agreement by its failure to maintain insurance. Klemme further testifed that LK sent a 10-day notice, dated May 15, 2023, which notified Albi it was in default under the terms of the lease agreement for failure to pay rent and failure to maintain commercial general liability insurance. Klemme stated the 10-day notice notified Albi that the lease agreement was terminated and it had 10 days to vacate the premises. Klemme testified that LK did not vacate the premises and as of the date of trial, LK was still in possession of the property.

¶ 13    Klemme testified that according to LK's internal accounting records, as of November 9, 2023, Albi owed $16,920.44. Klemme testified that Albi made delinquent payments from December 2022 through October 2023, and the late fees totaled $6,529.14. Klemme testified that Albi had a subtenant and paid LK $982 in bonus rent pursuant to the terms of the lease agreement. Klemme testified that section 23.12 of the lease agreement contained an "Entire Agreement" provision which required any amendment, modification, or supplement to the lease agreement to be in writing. Further, Klemme testified that the lease agreement contained a "Waiver" provision in section 23.6 and LK did not waive its rights to terminate the lease agreement and seek possession for any default.

¶ 14    Klemme testified that the initial term of the lease agreement expired around November or December of 2022 and Albi did not exercise its purchase option before expiration of the initial term. Further, Klemme testified that Albi did not provide a written notice of renewal of the lease, pursuant to section 1.3 of the lease agreement.

¶ 15    On cross-examination, Klemme testified that LK's internal accounting records, which showed an amount due as of November 9, 2023, did not reflect a rent payment made by Albi on November 13, 2023. Klemme testified that the amount at issue was $6,529.44, which equaled the late fees claimed for the period of November 2022 through October 2023. Klemme testified that LK waited until the notice of default was issued in May of 2023 to demand late fees. He also testified that LK routinely accepted payments after the first of the month. Klemme also conceded that LK no longer claimed, as alleged in its complaint, (a) that there was no certificate of occupancy, (b) that Albi was not in compliance with the fire code, and (c) that Albi did not get permission to make improvements on the property. Further, Klemme testified that he was aware that Albi sent a certificate of liability insurance, which named Albi as the insured, and LK as an additional insured, to LK's attorney on June 9, 2023.

¶ 16    Klemme testified that at the inception of the lease, Albi worked with James Leopold, a real estate broker with Barber Murphy. Klemme stated that Leopold was a managing member and 50% owner of LK, and that Albi was aware of Leopold's involvement in LK. Klemme testified that a third party offered $1.9 million to purchase the property, so LK presented a buy-out option to Albi, which was rejected.

¶ 17    Klemme testified that he sent an email to Albi, dated January 13, 2020, which requested rent payment by the 13th of each month. Klemme testified that the relationship of the parties was friendly and he considered Florije Sulejmani, Albi's manager, a friend. On re-direct, Klemme testified that he was lenient with Albi at times. He stated that his willingness to work with Albi was not intended to restrict his right to enforce LK's rights under the lease agreement.

¶ 18    The trial resumed on December 14, 2023. LK called Florije Sulejmani as an adverse party under section 2-1102 of the Code of Civil Procedure (735 ILCS 5/2-1102 (West 2022)). Sulejmani

testified she was the manager of Albi Express, LLC, a trucking company. She testified that her general duties included managing "trucking, paperwork, payroll, everything." Sulejmani testified that Albi leased the subject premises from LK beginning December 13, 2019, and that she is familiar with the subject premises.

¶ 19    Sulejmani testified that she understood the rent Albi paid to LK under the triple net lease agreement included base rent of $5,790 per month, reimbursement for taxes, insurance, and a portion of rent Albi received from subtenants. Sulejmani testified that she received invoices from LK on the 13th of each month, and so she did not "fully understand" rent was due on the 1st of each month until she received the notices of default. Sulejmani testified that rent was not always paid on the same date each month. She stated rent was sometimes paid on the 13th, sometimes the 17th, or sometimes rent was paid "six months ahead." Sulejmani testified she received the notices from LK dated April 13, 2023, April 27, 2023, May 3, 2023, and May 22, 2023. Sulejmani testified that Albi did not maintain commercial general liability insurance from commencement of the lease until June 9, 2023.

¶ 20    When examined by her own attorney, Sulejmani testified that at the time of trial, Albi did not owe any rent to LK, including rent for insurance and taxes. Sulejmani testified that Albi maintained insurance since the beginning of its operation but did not add LK as a certificate holder until June 9, 2023. Following the testimony of Sulejmani under section 2-1102, LK rested its case.

¶ 21    Albi presented its case in chief and continued with Sulejmani on the witness stand. Sulejmani testified that as of December 1, 2023, Albi paid LK a total of $704,617.17 throughout the course of the lease. She testified the only amount not paid was the late fees claimed by LK. Sulejmani also testified to the existence of a certificate of occupancy and fire inspection.

¶ 22    Sulejmani further testified that Albi made significant improvements to the property. Albi renovated 8,000 square feet of the front building including offices. Sulejmani testified that when Albi took possession, the condition of the property was "not good." She stated Albi spent approximately $200,000 on repairs to the building. Sulejmani testified that Albi paid $1,140 to LK for insurance. She testified that she believed the payment was to insure the premises for both landlord and tenant. She believed Albi was covered under that policy.

¶ 23    Sulejmani testified that she initially came across the subject premises for sale online in July of 2019. She contacted James Leopold to view the property. Sulejmani testified Leopold was Albi's realtor/agent with Barber Murphy. Albi sought to purchase the property but had issues with financing. Sulejmani testified that Leopold introduced her to an investor, Alex Klemme, to obtain financing. Sulejmani testified that Albi and Leopold executed a listing agreement which allowed Leopold to advertise the property for subtenants on behalf of Albi.

¶ 24    Sulejmani further testified that LK, via Alex Klemme, purchased the property. Sulejmani did not know of Leopold's involvement with LK. Sulejmani testified that it was her understanding that the transaction was a lease with an option for Albi to purchase. Sulejmani testified that sometimes LK's rent payments were made later than the first of the month, but other times the rent payments were made in advance. She testified that prior to receiving the notices of default, LK did not insist on payment on a certain date. Sulejmani testified that she had discussions with Klemme about doing business in the future. She stated that they planned to purchase another property to build a truck stop. Sulejmani testified that she sent Klemme a text message offering to pay $400,000 towards the principal under the purchase option.

¶ 25    Sulejmani testified that she was unaware that LK attempted to sell the property for $2.5 million. Sulejmani testified the lease was for an initial term of three years, with an option to renew

for an additional two years. She stated that Albi did not send a formal notice to LK to extend the lease and that she was unaware of any request from LK for a formal extension. Sulejmani testified that Albi continued to make rent payments following expiration of the initial term. Sulejmani testified that Albi intended to exercise the purchase option on or prior to December of 2024. The purchase price shown in the purchase option provision of the lease agreement was $588,000. Sulejmani testified that Albi did "not yet" have the ability to pay that amount but planned to obtain financing for the purchase.

¶ 26    Albi called James Leopold as a witness. Leopold testified that he was a broker with Barber Murphy. He testified that at the time of trial, he no longer actively leased or marketed properties, but Barber Murphy held his real estate license. He testified that he was involved with Albi attempting to buy the subject property, and when Albi could not procure financing, LK was created to take title of the property. Leopold testified he was a 50% owner of LK.

¶ 27    The trial concluded and the matter was taken under advisement. On March 13, 2024, the trial court issued its written order. The written order (1) entered judgment in favor of Albi and against LK on LK's claim for eviction and possession of the premises and for forfeiture of payments made by Albi; (2) entered judgment in favor of LK and against Albi for accrued late fees in the amount of $6,529.44 through December 2023; (3) granted Albi a credit of $573.80 for real estate taxes through December 1, 2023; and (4) ordered each party to bear their own attorney fees. The court held "[i]t would be inequitable to cause a forfeiture by Defendant of the amount it has paid under the Lease Agreement, where rent has been paid, and the only thing outstanding is Plaintiff's claim for late fees." In support of its order, the court relied on the equitable doctrine of laches. The court stated "[l]aches bars Plaintiff's claim to evict Defendant and effect a forfeiture

9

of Defendant's payments under the Lease Agreement." The court also held that plaintiff's claims are further barred by the doctrines of equitable estoppel and waiver.

¶ 28 On April 15, 2024, LK filed a motion to reconsider. In its motion to reconsider, LK argued that the trial court misapplied the relevant Illinois authority and law in finding against LK as to its claim for eviction and possession. Specifically, LK argued that the court misapplied the law in that the court awarded LK the amount of unpaid late fees but relied on Albi's asserted affirmative defenses in ruling in favor of Albi. A hearing on LK's motion to reconsider was held on July 8, 2024. On the same date, the trial court denied the motion to reconsider. In support of its denial of LK's motion to reconsider, the trial court stated it believed that the equitable defenses applied. The court further stated, in part:

> "I think that there was a pattern of practice under the equitable considerations, such as the defendant vastly improving the property as far as carpeting and the whole office area, repair warehouse doors, I think there was some repairs made to the parking areas, and I thought that using any factor as far as you were late on a couple of payments, and even though there was some late fees that had been paid, that that ought to be rent, and I thought it was vastly unfair to the defendant in this case, and I believe I rendered a correct judgment."

¶ 29 On August 6, 2024, LK filed its timely notice of appeal.

¶ 30                                    II. ANALYSIS

¶ 31 On appeal, LK argues that (1) the trial court's finding in favor of Albi as to LK's claim for eviction and possession of the subject premises was against the manifest weight of the evidence; (2) the trial court abused its discretion by applying the equitable defenses of laches, estoppel, and waiver; and (3) the trial court erred by denying LK's motion to reconsider the March 13, 2024, order. For the reasons that follow, we affirm the judgment of the trial court. We consider each argument in turn.

10

¶ 32    LK first argues that the trial court's order in favor of Albi as to LK's claim for eviction and possession was against the manifest weight of the evidence. LK correctly points out that section 2.1 of the lease agreement includes accrued late fees in its definition of "Rent." Further, section 18.1 defined an "Event of Default" as failure "to pay Rent when due or any payment or reimbursement under this Lease when due and such payment or reimbursement remains unpaid after the expiration of five (5) days after the date of delivery of written notice." Albi argues that the trial court correctly found it was inequitable to cause a forfeiture by Albi where, at the time of trial, rent had been paid, and the only issue outstanding was LK's claim for late fees. We agree with Albi.

¶ 33    In the case before us, the trial court found "[i]t would be inequitable to cause a forfeiture by defendant of the amount it has paid under the Lease Agreement, where the rent has been paid, and the only thing outstanding is Plaintiff's claim for late fees." The court held that laches barred LK's claim to evict Albi and effect a forfeiture of Albi's payments under the lease agreement. Further, the court held LK's claims are barred by the doctrine of equitable estoppel. Lastly, the court stated that the parties, "through a course of dealing, established a pattern by which the Defendant was given additional time to make payments." Because the trial court's judgment in favor of Albi was based on the application of the affirmative defenses, we address those issues together.

¶ 34    The standard of review in an action brought under the Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101 *et seq.* (West 2022)), now known as the Eviction Act (see P.A. 100-173 (eff. Jan. 1, 2018)), is whether the trial court's judgment was against the manifest weight of the evidence. *S & D Service, Inc. v. 915-925 W. Schubert Condominium Ass'n*, 132 Ill. App. 3d 1019, 1021 (1985). "A judgment is against the manifest weight of the evidence only when an opposite

11

conclusion is apparent or when findings appear to be unreasonable, arbitrary or not based on evidence." *Harper Square Housing Corp. v. Hayes*, 305 Ill. App. 3d 955, 964 (1999). The role of the reviewing court is not to reinterpret the evidence or to engage in speculation, but only to determine if evidence in the record supports the lower court's judgment. *American Management Consultant, LLC v. Carter*, 392 Ill. App. 3d 39, 55 (2009).

¶ 35     The standard of review of a trial court's decision to exercise equitable powers is an abuse of discretion. *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 175 (1998). "It has long been the rule that laches is a question addressed to the sound discretion of the trial court and the decision of the trial court to apply or not to apply the doctrine will not be disturbed unless a clear abuse of discretion appears." *Worley v. Ehret*, 36 Ill. App. 3d 48, 56 (1976). An abuse of discretion occurs where the trial court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the court. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 34.

¶ 36     At one time, the law in Illinois was that equitable defenses were not available in a forcible entry and detainer action. (See *Meyer v. Surkin*, 262 Ill. App. 83 (1931); *Cody Trust Co. v. Dittmar*, 272 Ill. App. 167 (1933); *Wein v. Albany Park Motor Sales Co.*, 312 Ill. App. 357 (1941); *Winitt v. Winitt*, 339 Ill. App. 75 (1949); *D. J. Bielzoff Products Co. v. James B. Beam Distilling Co.*, 3 Ill. App. 2d 530 (1954); *Jordan v. Weston*, 26 Ill. App. 2d 498 (1960)). However, the Illinois Supreme Court has held that equitable defenses may be raised, and equitable relief granted in a forcible entry and detainer action. *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 257 (1970); *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 359 (1972).

¶ 37     "The appropriate test to apply in determining whether equitable defenses and claims can be made in a forcible entry and detainer action is whether the matters raised thereby are germane

12

to the distinctive purpose of the action." *Worley*, 36 Ill. App. 3d at 55 (citing *Fisher*, 46 Ill. 2d at 255). "Forcible entry and detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession." *Bleck v. Cosgrove*, 32 Ill. App. 2d 267, 272 (1961).

¶ 38     LK argues that the evidence at trial showed that LK provided Albi with proper notice under section 18.1 of the lease agreement and section 9-209 of the Act (735 ILCS 5/9-209 (West 2022)). LK correctly points out that the trial court found that late fees were due to LK in the amount of $6,529.44. As such, LK argues it was entitled to possession of the subject premises. In support of its argument, LK relies on *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351 (1972), for the notion that in an eviction action where a plaintiff asserts a right to possession based solely on the nonpayment of rent, "the question of *whether rent is due and owing* is not only germane, but *** *is the crucial and decisive issue* for determination." *Little*, 50 Ill. 2d at 358 (emphases added).

¶ 39     Based on the facts and record before us, we disagree with LK's argument that Albi's asserted defenses are not relevant to the question of possession. Albi argues, and the trial court found, that Albi did not strictly comply with the terms of the lease *because of* the asserted defenses. Sulejmani testified that she did not know when rent was actually due, in part because of LK's email requesting payment by the 13th of each month. Further, LK failed to timely demand payment of late fees. The court found Albi had paid all outstanding rent (minus the late fees), substantially improved the property, and had paid more than $700,000 to LK throughout the course of the lease.

¶ 40     In the case at hand, the equitable defenses were appropriately raised by the defendant. The defenses were germane to the issue of plaintiff's right to possession based on a failure to pay timely rent. As such, we fail to see how the equitable defenses asserted by Albi are not germane to the

13

breach of the lease agreement that LK alleges. Accordingly, the court did not abuse its discretion in applying Albi's equitable defenses.

¶ 41    Because we find the trial court's application of affirmative defenses proper, we next consider whether the court's judgment was against the manifest weight of the evidence. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary or not based on evidence." *Hayes*, 305 Ill. App. 3d 955, 964 (1999). The role of the reviewing court is not to reinterpret the evidence or to engage in speculation, but only to determine if evidence in the record supports the lower court's judgment. *American Management Consultant, LLC v. Carter*, 392 Ill. App. 3d 39, 55 (2009).

¶ 42    The trial court found "[l]aches bars Plaintiff's claim to evict Defendant and effect a forfeiture of Defendant's payments under the Lease Agreement." Laches is an equitable doctrine which bars the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. *Tully v. State*, 143 Ill. 2d 425, 432 (1991). "There is no fixed rule as to what constitutes laches, determination as to its existence being governed by the facts and circumstances of each case." *Einsweiler v. Einsweiler*, 390 Ill. 286, 292 (1945). There are two fundamental elements of laches: (1) " 'lack of due diligence by the party asserting the claim' " and (2) " 'prejudice to the opposing party.' " *Tillman v. Pritzker*, 2021 IL 126387, ¶ 25 (quoting *Van Milligan v. Board of Fire & Police Commissioners of the Village of Glenview*, 158 Ill. 2d 85, 89 (1994)).

¶ 43    The lease agreement between the parties commenced in December of 2019. Section 2 of the lease agreement stated that rent shall be paid on the first of each month. As early as January 2020 LK sent an email to Albi asking that rent be paid by the 13th of each month. LK did not

14

attempt to enforce timely payment pursuant to the lease agreement until April 2023. We agree with the trial court, that in the case at hand, the parties, "through a course of dealing, established a pattern by which [Albi] was given additional time to make payments." Courts are reluctant to come to the aid of a party who has knowingly slept on its rights. *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 550 (1993).

¶ 44 LK did not attempt to enforce the terms of the lease agreement until almost three and a half years after Albi's alleged breach of failure to pay timely rent. As Sulejmani testified, it was not clear when rent was due. LK caused this confusion by sending an email requesting rent to be paid by the 13th of each month. Further, Albi made significant improvements to the property while under the belief it would have the ability to exercise its option to purchase. We reiterate the trial court's concern that "there was a troubling aspect to the relationship between the parties in that James Leopold testified that not only was he a real estate broker for the Defendant at all relevant times in this matter, but he also held a fifty percent (50%) business interest in the Plaintiff." Under the facts and circumstances of this case, we find that the trial court's judgment in favor of Albi for the claim of eviction and possession was not against the manifest weight of the evidence. Because we conclude that the trial court appropriately applied the affirmative defense of laches in ruling for Albi, we decline to consider the applicability of equitable estoppel or waiver.

¶ 45 Lastly, LK argues on appeal that the trial court erred by denying its motion to reconsider. LK's motion to reconsider argued that the trial court misapplied the relevant Illinois authority and sections 9-102(a)(4) and 9-209 of the Act (735 ILCS 5/9-102(a)(4), 9-209 (West 2022)) in finding against LK as to its claim for eviction and possession. The purpose of a motion to reconsider is to alert the court to newly discovered evidence, changes in the law, or errors in the court's application of previously existing law. *Nissan Motor Acceptance Corp. v. Abbas Holding I, Inc.*, 2012 IL App

15

(1st) 111296, ¶ 16. Generally, a trial court's decision to grant or deny a motion for reconsideration lies within its discretion and will not be reversed absent an abuse of that discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1078 (2007). However, where the motion was based solely on the trial court's application or purported misapplication of existing law, rather than on new facts or legal theories not presented at trial, a court of review will apply a *de novo* standard of review. *Nissan Motor Acceptance Corp.*, 2012 IL App (1st) 111296, ¶ 16. Here, LK's motion to reconsider argued the trial court misapplied existing law. Thus, we review the trial court's denial of the motion for reconsideration *de novo*.

¶ 46    In support of its motion to reconsider, LK reiterated its previous argument, that whether rent is due and owing is not only germane, but is the crucial and decisive issue for the determination in cases where the right to possession is asserted solely by reason of nonpayment. LK argued that if rent is due and the tenant has not paid after proper notice, the landlord is entitled to possession.

¶ 47    For the reasons stated above, we disagree with LK's contentions. Because we found above that the trial court's application of equitable defenses was not an abuse of discretion, and the trial court's ultimate finding against LK was not against the manifest weight of the evidence, we find the court did not misapply the law. As such, we find the trial court did not err in its application of Illinois law to the facts of the matter at hand. Accordingly, we find the court's denial of LK's motion to reconsider was not in error.

¶ 48    For the foregoing reasons, we conclude that the trial court did not abuse its discretion by applying the affirmative defenses of laches and the manifest weight of the evidence supports the trial court's finding. Further, the trial court did not err by denying the motion to reconsider.

¶ 49                                    III. CONCLUSION

¶ 50    For these reasons, the judgment of the Madison County trial court is affirmed.

16

¶ 51    Affirmed.